IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

HANOVER INSURANCE COMPANY,

    Plaintiff,

vs.                           CASE NO.: 4:20-cv-00148-AW-MAF

FLORIDA COALITION AGAINST
DOMESTIC VIOLENCE, INC., a Florida
not-for-profit corporation; TIFFANY
CARR; SANDRA BARNETT; PATRICIA
DUARTE; MELODY KEETH; LAUREL
LYNCH; ANGELA DIAZ-VIDAILLET;
SHANDRA RIFFEY; DONNA FAGAN;
THERESA BEACHY; SHERYL SCHWAB;
LORNA TAYLOR; and PENNY MORRILL,

    Defendants.

_____/

**MOTION TO DISMISS PLAINTIFF'S COMPLAINT
BY DEFENDANTS KEETH, LYNCH, DIAZ-VIDAILLET,
RIFFEY, BEACHY, SCHWAB AND MORRILL
(AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT)**

    Defendants Melody Keeth, Laurel Lynch, Angela Diaz-Vidaillet, Shandra Riffey, Theresa Beachy, Sheryl Schwab and Penny Morrill ("Defendants" or "Former Directors") move to dismiss the complaint of Hanover Insurance Company ("Plaintiff" or "Hanover") pursuant to Rules 12(b)(1) and 12(b)(6), Fed. R. Civ. P., and the inherent authority of the court. Alternatively, Defendants request that this case be stayed pending disposition of *Florida Department of Children and Families,*

*v. Florida Coalition Against Domestic Violence, Inc.*, et al., Case No. 2020-CA-000431 (filed March 4, 2020), pending in the Circuit Court in Leon County ("*DCF Lawsuit*").

## MEMORANDUM OF LAW

Defendants are former directors of the Florida Coalition Against Domestic Violence, Inc. They are named as individual defendants in the DCF Lawsuit. Hanover filed the instant case in this court seeking a declaratory judgment with respect to its duty to defend (Counts I and II) and duty to indemnify (Count III) the Former Directors, and others, in the DCF Lawsuit.[1]

Hanover's complaint for declaratory judgment should be dismissed or stayed as to the Former Directors based on one or more of the following grounds:

1. The complaint should be dismissed in its entirety as to Defendant Penny Morrill for lack of subject matter jurisdiction and for failure to state a claim for relief under Rule 12(b)(6).

---

[1] In the instant complaint, Hanover refers to two lawsuits: the DCF Lawsuit and the AG Lawsuit, collectively the "State Litigation." The Former Directors are not parties to the AG Lawsuit. They are named as parties only in the DCF Lawsuit.

The DCF Lawsuit features DCF as the sole plaintiff and 13 defendants: one corporate (Florida Coalition Against Domestic Violence, Inc. ("FCADV")), three former employee-officers of FCADV, and nine former volunteer members of the FCADV Board of Directors. In its complaint in the instant litigation, Hanover names those 13 defendants and adds a 14th, Florida Coalition Against Domestic Violence Foundation, Inc.

The second lawsuit, the AG Lawsuit, is styled *Office of the Attorney General, State of Florida, Dep't of Legal Affairs v. Florida Coalition Against Domestic Violence, Inc.* Case No. 2020 CA 000437 (filed March 4, 2020). The AG Lawsuit features the Office of Attorney General as the sole plaintiff and three defendants: FCADV, FCADV Foundation, and the former CEO. None of the Former Directors is a defendant in the AG Lawsuit.

2.     Counts I and II of the complaint should be dismissed as to all the Former Directors for failure to state a claim for relief under Rule 12(b)(6). Alternatively, this case should be stayed with respect to Counts I and II, pending disposition of the DCF Lawsuit, as a matter of discretion under the Declaratory Judgment Act and pursuant to the court's inherent authority.

3.     Count III should be dismissed, or stayed pending disposition of the DCF Lawsuit, because the claim is not ripe.

## I.     Lack of Subject Matter Jurisdiction and Failure to State a Claim as to Defendant Morrill

Although Hanover includes defendant Morrill in the style of the case and the prefatory text, Hanover makes no allegations regarding Morrill either as a party or as a citizen of Florida. Thus, there are no factual allegations against her.

Hanover asserts diversity jurisdiction pursuant to 28 U.S.C. § 1332 against all of the Former Directors. *See* Complaint, ECF No. 1, p. 7, at ¶ 26. Section 1332(a)(1) confers subject matter jurisdiction on federal district courts for suits involving "citizens of different states." Hanover alleges it is a citizen of Massachusetts. *Id.*, p. 6, at ¶ 12. Hanover also alleges in the body of the complaint that the two corporate defendants and eleven individual defendants are all citizens of Florida. *Id.*, pp. 6 - 7, at ¶¶ 12 – 25. Morrill is missing entirely from that list of parties, and there is no factual allegation that she is a citizen of Florida.

3

Failure to allege an individual defendant is a citizen of the forum state is fatal to a complaint. *See, e.g., Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994) (citizenship "is the key fact that must be alleged . . . to establish diversity for a natural person."). Hanover has failed to make that key allegation against Morrill.

Additionally, the complaint fails to allege facts in the body of the complaint with respect to Morrill. Thus, Hanover also fails to state a claim for relief against her.

## II. Counts I and II Should Be Dismissed for Failure to State a Claim as to All the Former Directors, or in the Alternative, these Counts Should Be Stayed

In Count I, Hanover seeks a declaratory judgment that it has no duty to defend the Former Directors in the DCF Lawsuit based on six exclusions in the Hanover policy and two additional legal arguments. Count II is predicated on the outcome of Count I. In Count II, Hanover seeks a declaratory judgment that if there is a determination that there is no duty to defend under Count I, then Hanover is entitled to recoup severally from the Former Directors the defense costs it has paid on their behalf in the DCF Lawsuit.

### A. Standard on Motion to Dismiss for Failure to State a Claim

In considering a motion to dismiss for failure to state a claim, factual allegations must be distinguished from mere legal conclusions. Factual allegations must be accepted as true, but mere legal conclusions are not accepted as true. *See*

*Ashcroft v Iqbal*, 556 U.S. 662, 678-679 (2009). Moreover, the plaintiff must allege "enough facts to state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." *Iqbal,* 566 U.S. at 678. As explained by the Supreme Court in *Iqbal*:

> [T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. … Although … we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation' (citation omitted). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.

*Iqbal*, 566 U.S. at 678-79.

Moreover, in assessing facial plausibility, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "Where a complaint pleads facts that are 'merely consistent with' the defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557).

### B. Standard for Duty to Defend

Under Florida law, "an insurance provider's duty to defend an insured party 'depends *solely* on the facts and legal theories alleged in the pleadings and claims against the insured.'" *Stephens v. Mid-Continent Cas. Co.*, 749 F.3d 1318, 1323 (11th Cir. 2014) (citation omitted) (emphasis in original). The "duty to defend 'arises when the relevant pleadings allege facts that fairly and potentially bring the suit within policy coverage.'" *Id*. (citation omitted) (internal quotation omitted). Thus, "an insurer is obligated to defend a claim even if it is uncertain whether coverage exists under the policy." *Id*. (citation omitted) (internal quotation omitted). Where "the actual facts are inconsistent with the allegations in the complaint, the allegations in the complaint control in determining the insurer's duty to defend." *Id*. (citation omitted) (internal quotation omitted).

If the allegations in the underlying complaint "leave any doubt regarding the duty to defend, the question must be resolved in favor of the insured requiring the insurer to defend." *First Specialty Ins. Corp. v. 633 Partners, Ltd.*, 300 F. App'x 777, 785 (11th Cir. 2008) (*citing Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.,* 470 So.2d 810, 814 (Fla. 1st DCA 1985)). Accordingly, allegations in the complaint that are ambiguous "must be construed most favorably to the insured to establish the duty to defend." *Baron Oil*, 470 So.2d at 816.

Moreover, if the underlying complaint "alleges facts showing two or more grounds for liability, one being within the insurance coverage and the other not, the insurer is obligated to defend the entire suit. *Id.*, 470 So.2d at 813-814. The duty to defend "would extend to all claims, even those not within the scope of coverage." *First Specialty*, 300 F. App'x at 782.

Significantly, "the duty to defend is both distinct from and broader than the duty to indemnify, meaning that insurers are obligated to defend even if the allegations in the complaint are inconsistent with the actual facts or completely meritless." *Id.* Even where extrinsic facts might have the effect of establishing the existence of an exclusion to coverage, the duty to defend is determined by the allegations in the underlying complaint, not by extrinsic facts. *See Baron Oil*, 470 So.2d at 814-816 (where policy excluded coverage for claims relating to injury of Named Insured's employee, insurer had duty to defend even though underlying plaintiff was employee of Named Insured, because complaint in underlying action did not allege employment relationship).[2]

---

[2] Although some Florida courts have recognized that "special circumstances," in "exceptional cases" may permit the court to consider extrinsic evidence on the duty to defend, this exception is not applicable in the instant case. These "exceptional" cases have involved circumstances where: (i) the plaintiff in the underlying case would not be expected to include a crucial fact regarding coverage in the underlying complaint and thus omits that crucial fact from the complaint and (ii) the insured in the coverage case concedes that crucial fact, or does not dispute it, such that it is "manifestly obvious to all involved" that there is no coverage. *See First Specialty*, 300 F. App'x at 785-787; *Composite Structures, Inc. v. Continental Ins. Co.*, 560 F. App'x. 861, 865 at n. 2 (11th Cir. 2014). In the instant case, the Former Directors do not concede the truth of any extrinsic facts alleged in Hanover's complaint which would defeat coverage. Moreover, the Eleventh Circuit has

## C. <u>Construction of Insurance Policy</u>

Under Florida law, "interpretation of an insurance policy is a question of law to be decided by the court." *Gulf Tampa Drydock Co. v. Great Atl. Ins. Co.*, 757 F.2d 1172, 1174 (11th Cir. 1985). Where a term in an insurance policy is ambiguous, a court must "construe it in favor of the insured and against the insurer." *Gas Kwick, Inc. v. United Pac. Ins. Co.*, 58 F.3d 1536, 1539 (11th Cir.1995) (citing Davis v. Nationwide Life Ins. Co., 450 So.2d 549, 550 (Fla. 5th DCA 1984)). Although the insured bears the burden of proving that a claim is covered by the insurance policy, the "burden of proving an exclusion to coverage is . . . on the insurer." *LaFarge Corp. v. Travelers Indem. Co.*, 118 F.3d 1511, 1516 (11th Cir.1997).

## D. <u>Policy Coverage and Hanover's Alleged Exclusions</u>

Hanover identifies six policy exclusions and two additional grounds for its claim that it has no duty to defend the Former Directors in the DCF Lawsuit.

---

noted that "this exception [to allow consideration of extrinsic evidence] is not universally applied throughout Florida," citing *Baron Oil;* and the Eleventh Circuit has also indicated that the Florida decisions applying the exception are "aberration[s]." *See First Specialty,* 300 F. App'x at 786 (citing *Sphinx Int'l, Inc. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 226 F. Supp. 2d 1326, 1338 (M.D. Fla. 2002)). Accordingly, extrinsic evidence should not be considered when determining Hanover's duty to defend in the instant case. *See Mid-Continent Casualty Company v. Gozzo Development, Inc.*, 2017 WL 3578846 (S.D. Fla. 2017) (declining to consider extrinsic evidence and granting insured's motion to dismiss insurer's claim for declaration of no duty to defend). Finally, if the Court were to allow extrinsic evidence to be considered in the instant case, then Count I and Count II should be stayed pending disposition of the DCF Lawsuit, as discussed below, pursuant to this Court's inherent authority and its broad discretion under the Declaratory Judgment Act.

Hanover's complaint fails to allege an adequate factual basis to support its request

for a declaratory judgment regarding its duty to defend.

1. The DCF Lawsuit

The DCF Lawsuit includes 45 general factual allegations, two exhibits, and

51 counts. *See* ECF No. 1-3. By contrast, the Hanover complaint includes 123

general factual allegations, three counts, and multiple exhibits: the DCF Lawsuit and

its two exhibits, plus eight additional exhibits including a newspaper article, various

letters and e-mails, and the AG Lawsuit. *See* Complaint and exhibits, ECF No. 1 and

ECF No. 1-2 through 1-12. As explained above in footnote 2, in determining

Hanover's duty to defend, the Court should disregard the extrinsic evidence attached

to the Hanover complaint and limit its consideration to the DCF complaint and the

Hanover Policy. *See also Diamond State Ins. Co. v. Boys' Home Ass'n, Inc.*, 172 F.

Supp. 3d 1326, 1339-40.

DCF alleges that it provided funding to the FCADV pursuant to two contracts,

and that these contracts required FCADV to provide documents and information to

DCF on request. DCF also alleges that FCADV failed to provide documents and

information, as requested, in order to conceal allegedly excessive compensation

being paid to its CEO.

In the DCF Lawsuit, DCF asserts four identical counts against each of the

Former Directors: Fraudulent Concealment, Fraudulent Misrepresentation,

*Negligent Misrepresentation*, and Civil Conspiracy. With respect to each Former Director, DCF seeks a monetary damages award "in an amount greater than $30,000" and "such other relief as this Court deems just and proper." *See* DCF Lawsuit, ECF No. 1-3, p. 33.

### 2. Hanover's Coverage

Hanover concedes the applicable D & O Coverage in the Hanover policy had an inception date of December 19, 2019, and that the Former Directors are insureds under the policy. *See* Complaint, ECF No. 1, p. 1-2, at ¶ 1. The DCF Lawsuit was filed on March 4, 2020, after the inception date of the Hanover policy. *Id.*

The Hanover policy provides coverage against a "**Loss** which the **Insured Individual** is legally obligated to pay due to a **Claim** first made against the **Insured Individual** during the **Policy Period** . . . ." *See* Hanover policy, ECF No. 1-2, p. 21, § I.A (emphasis in original).[3]

The Hanover policy defines a "Claim," as it relates to the Former Directors and narrowed by relevance to the DCF Lawsuit, as any:

> 1. Written demand received by an **Insured** for monetary or non-monetary relief including injunctive relief;
> 2. Civil proceeding commenced by the service of a complaint or similar pleading;
> . . . .

---

[3] The Hanover policy boldfaces several defined terms. For accuracy, all such terms will be boldfaced herein when quoting the policy. All such emphasis is in the original unless stated otherwise.

> 4.      Formal administrative or regulatory proceeding commenced by the filing of charges, formal investigative order or similar document; . . . .
>
> against an **Insured Individual** for a **Wrongful Act**, including any appeal therefrom[.]

*See id.*, pp. 21-22, at § III.A.

The Hanover policy defines a covered "Wrongful Act" as, *inter alia*, "any actual or alleged act, error, omission, misstatement, misleading statement, neglect, breach of duty committed or attempted, or allegedly committed or attempted by . . . an **Insured Individual** in his or her capacity as such . . . ." *See id.*, p. 24.

### 3.  Hanover's Alleged Exclusions

Hanover's allegations in its complaint, in conjunction with the DCF Lawsuit, fail to eliminate "any doubt" regarding Hanover's duty to defend. Thus, "the question must be resolved in favor of the insured requiring the insurer to defend." *First Specialty*, 300 F. App'x at 785 (*citing Baron Oil Co.,* 470 So.2d at 814). Count I and Count II should, therefore, be dismissed for failure to state a claim.

### a) *The Prior & Pending Proceedings Exclusion*

Under the Prior & Pending Proceedings Exclusion, there is no coverage for a claim that is "[b]ased upon, arising out of or in any way related to any litigation, administrative or arbitration proceeding, written demand pending against any **Insured**, or any order, decree or judgment entered prior to or on [December 19, 2019]." *See* Hanover policy, ECF No. 1-2, pp. 24-25, at § IV.A.2. For support,

Hanover notes that the DCF Lawsuit alleges DCF sent a letter to FCADV on August 27, 2018, "'notifying FCADV that DCF Office of the Inspector General (OIG) was initiating an investigation of FCADV's administrative costs and executive compensation.'" *See* Complaint, ECF No. 1, p. 12, ¶ 51 (quoting DCF Lawsuit). Hanover further notes the DCF Lawsuit alleged the letter "included a request for documentation . . . ." *See, id.*, p. 12, at ¶ 52.

Hanover asserts this letter, and four other letters back and forth with FCADV's outside counsel requesting and responding to document production, constituted "written demand[s]" as that phrase is used in the Prior and Pending Proceedings Exclusion of the Hanover policy. Letters and emails exchanged between FCADV and DCF are attached as Exhibits to the Hanover complaint (ECF No. 7-6 through 7-11), but they are not exhibits to the DCF complaint. These documents constitute extrinsic evidence and, thus, should not be considered in determining whether Hanover has shown that the Prior and Pending Proceedings exclusion applies to relieve Hanover of its duty to defend.

The facts alleged in DCF's complaint in the DCF Lawsuit fall short of dispelling "any doubt," *First Specialty*, 300 F. App'x at 785, regarding whether the DCF Lawsuit is a Claim arising out of a "Prior or Pending Proceeding" against the Insureds. Where there is any doubt regarding coverage, the insurer must defend its

insureds. Accordingly, Count I and Count II should be dismissed to the extent these Counts are based on this Exclusion.

><b><i>b)</i></b> <u><i>The Policy Application Claim Exclusion and The Policy Claim Exclusion</i></u>

Hanover asserts that it has no duty to defend based on the Policy Application Claim Exclusion. *See* Complaint, ECF No. 1, pp. 21 - 22, at ¶ 106. That exclusion relies on section XI[4] of the policy application, which asked whether "the **Insured** proposed for coverage" is "aware of any fact, circumstance, or situation that might reasonably be expected to result in a **Claim** that would fall within the scope of the proposed **Liability Coverage Parts**." *Id.*, p. 21, at ¶ 102; ECF No. 1-2. The application had the "no" box checked. Hanover alleges that this was an untruthful response based on the correspondence exchanged between DCF and the FCADV.

Similarly, Hanover asserts that it has no duty to defend under the Policy Claim Exclusion, which provides, "If the **Application** contains any misrepresentations made with the intent to deceive or contains misrepresentations which materially affect the acceptance of the risk or hazard assumed by the **Insurer**," then no coverage will be provided for any Claim "based upon, arising from, or in consequence of, any such misrepresentation with respect to" any **Insured** "who knew of such misrepresentations (whether or not such individual knew such

---

[4] Hanover's complaint alleges this is Section IX of the Application, but it is actually Section XI of the Application. *See* ECF No. 1-2, p. 76 ("Prior Knowledge and Applicant Representation").

**Application** contained such misrepresentations).” *See* Complaint, ECF No. 1, p. 22, at ¶ 107.

Such prior knowledge exclusions have both a subjective and an objective component. *See Diamond State Ins. Co. v. Boys' Home Ass'n, Inc.*, 172 F. Supp. 3d 1326, 1337 (M.D. Fla. 2016). For these exclusions to apply to a particular insured, that insured must have had subjective knowledge as of the time of submission of the application of a fact, circumstance, or situation that might reasonably be expected to result in a “Claim” which would fall within the scope of the D&O coverage of the Hanover policy.

The factual allegations in the DCF Lawsuit do not satisfy the subjective and objective components of these two exclusions as they relate to the Former Directors. Accordingly, the Hanover complaint has not alleged facts which clearly show that these exclusions relieve Hanover of its duty to defend the Former Directors in the DCF Lawsuit.

### c) *The Fraud Exclusion and the Profit Exclusion*

Hanover's complaint also asserts what it labels the “Fraud” and “Profit” exclusions, each of which it refers to in the policy as “Conduct” exclusions. *See* Complaint, ECF No. 1, pp. 22-24, at ¶¶ 110–117; Hanover policy, ECF No. 1-2, p. 25, at §§IV.A.3.a. and b.

Under the first Conduct exclusion, there is no coverage for any Loss or Claim "[b]ased upon, arising out of or in any way related to [a]ny deliberate, dishonest, fraudulent act or omission, or willful violation of any statute or regulation by an **Insured**[.]" Hanover's application of this exclusion relies on three of DCF's four counts against all of the individual defendants, including the Former Directors. *See* Complaint, ECF No. 1, p. 23, at ¶ 112. Those three counts are titled "Fraudulent Concealment," "Fraudulent Misrepresentation," and "Civil Conspiracy." *Id.*

However, Hanover fails to mention the fourth count that DCF brought against all individual defendants: "Negligent Misrepresentation." *See, e.g.*, DCF Complaint, ECF No. 1-3, pp. 34-35, at ¶¶ 177-182. In support of its negligence claim against the Former Directors, DCF alleges that the Former Directors were negligent in that they allegedly made representations that they "should have known" were incorrect. *Id.*, p. 35, at ¶180.

It is axiomatic under Florida law that where an insurance carrier is obligated to defend a negligence claim—as Hanover is so obligated here—then it also is obligated to defend all other claims in the same lawsuit. *See, e.g., Century Sur. Co. v. Kid's Club Preschool, Inc.,* No. 4:10CV539-RH/WCS, 2011 WL 13118599, at *2 (N.D. Fla. 2011) (holding that where complaint alleges both negligence and intentional tort, insurer must defend entire lawsuit, notwithstanding exclusion for intentional acts). Thus, because the DCF Lawsuit alleges negligence, and because

15

that count is clearly a covered claim, Hanover has a duty to defend the entire DCF Lawsuit. Accordingly, the "Fraud Exclusion" does not apply.

Moreover, as it relates to the Former Directors, the allegations of fraud in the DCF Lawsuit fail to meet the requirements of *Ashcroft v. Iqbal* and *Bell Atlantic Corp. v. Twombly*, meaning they cannot form the basis of a denial of Hanover's duty to defend. Those cases require complaints to contain factual allegations that are facially plausible and not just threadbare recitations of elements and legal conclusions. *Iqbal*, 566 U.S. at 678-79. And "where the well-pleaded facts do not permit the court to infer more than *the mere possibility of misconduct*, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (emphasis added). The allegations of fraud in the DCF Lawsuit, as they relate to the Former Directors, fall far short of this standard.

The second Conduct exclusion provides that coverage will be excluded for any Claim involving "[a]n **Insured** gaining any profit, remuneration or advantage to which such **Insured** was not legally entitled[.]" *See* Hanover policy, ECF No. 1-2, p. 25, at § III.A.3.b.

In support of this exclusion, Hanover's complaint relies on allegations in the AG Lawsuit (*see* Complaint, ECF No. 1, pp. 23-24, at ¶ 115), which allegations must be disregarded in the instant coverage case because the Former Directors are not

parties to the AG Lawsuit. Hanover also relies on language in the DCF Lawsuit that the Former Directors received "personal benefits" as part of the "aforementioned scheme and conspiracy." *See, id.*, at 24, ¶ 116.

Hanover's reliance on that language from the DCF Lawsuit is also misplaced because those allegations, too, fail to meet the standard of *Iqbal* and *Twombly*. The DCF Lawsuit's allegations of personal gain by the Former Directors appear in paragraphs 36 and 37.

Paragraph 36 alleges, as to all of the individual defendants, "*Upon information and belief* . . . each received a number of personal benefits, including, but not limited to, increased salaries, compensation, bonuses, and PTO." (emphasis added). This conclusory allegation lacks even a scintilla of any underlying factual support in the complaint. Paragraph 37 makes a conclusory allegation that the individual defendants acted as part of "a scheme and conspiracy whereby board members who supported Ms. Carr's astronomical compensation received more funding from FCADV for their own centers, and in turn, the Defendants received higher executive salaries from their own boards." Again, however, there is not a single supporting fact alleged of any of the Former Directors actually receiving "more funding for their own centers" or "higher executive salaries from their own boards."

The allegation of personal benefit arises in the civil conspiracy count in the DCF Lawsuit. There it is alleged that all defendants used funds received through the

DCF contracts "to pay Defendants an exorbitant salary, bonuses, and PTO." *See, e.g.*, DCF Complaint, ECF No. 1-3, p. 36, at ¶ 186. The allegation is made, again, without any underlying factual foundation in the complaint.

Thus, the allegations in the DCF Lawsuit show only "the mere possibility of misconduct." They do not show "that the pleader is entitled to relief." Accordingly, those sparse and threadbare allegations cannot form the basis for excluding coverage, and the "Profit Exclusion" should be rejected.

Furthermore, by the plain language of the Hanover policy itself, the assertion of a Conduct Exclusion with respect to the duty to defend is premature. The Conduct Exclusion also provides:

> [T]his exclusion shall not apply to **Defense Expenses** unless and until a final, non-appealable judgment or adjudication in any underlying proceeding or action establishes that an **Insured** committed such an act or omission, violation of statute or regulation or gained such profit, remuneration or advantage to which the **Insured** was not legally entitled.

Accordingly, since neither Conduct Exclusion applies until entry of a final, non-appealable judgment, Hanover's effort to apply these exclusions now with respect to the duty to defend is premature and should be rejected.

### d) *The Contract Exclusion*

The Contract Exclusion is alleged against FCADV only. *See* Complaint, ECF No 1, pp. 24-25, at ¶¶ 118-119. Thus, this exclusion has no applicability to the Former Directors.

### e) *Uninsurable As A Matter of Law*

Hanover asserts, without citation, that the "State Litigation" seeks recovery of uninsurable losses through "restitution, disgorgement and/or the return of ill-gotten gains of improperly paid wages, bonuses and PTO." *See, id.*, p. 25, at ¶ 121. The DCF Lawsuit does not seek such relief from the Former Directors. As noted above, all of DCF's requests for relief against the Former Directors seek an "[a]ward of damages in an amount greater than $30,000 [and] such other relief as this Court deems just and proper." One of the claims is a negligence claim. Accordingly, the Loss alleged against the Former Directors is an insurable Loss. Thus, this argument does not relieve Hanover of its duty to defend.

### f) *The Known Loss Doctrine*

The Known Loss doctrine describes a basic tenet of insurance: "the carrier insures a risk, not a certainty." *Interstate Fire & Cas. Co. v. Abernathy*, 93 So.3d 352, 359 (Fla. 1st DCA 2012) (citation omitted). The doctrine applies only where the insured seeks to insure against a known loss that already exists. *See Nourachi v. First American Title Ins. Co.*, 44 So.3d 602, 610 (Fla. 5th DCA 2010) (Lawson, J., concurring) ("Essentially, the doctrine provides that one may not obtain insurance for a loss that either has already taken place or is in progress.") (citation omitted). However, the doctrine does not apply to a "party seeking to insure against the risk of a potential adverse claim." *See, id.*, 44 So.3d at 609.

19

Hanover asserts the doctrine should apply because,

> When FCADV submitted its Policy Application seeking coverage, the INSUREDS *knew or should have reasonably known* that: (i) Carr and other executives at FCADV had misappropriated of [sic] millions of dollars in grant monies for their own personal benefit; and/or (ii) that DCF had made no less than five written demands for documents pursuant to the DCF Investigation—and that a claim or injury had already occurred.

Hanover Complaint, ECF No. 1, pp. 25 - 26, at ¶ 123 (emphasis added).

Hanover's assertion of the Known Loss doctrine is premature and does not relieve it of its duty to defend. The issue of what the Former Directors knew or should reasonably have known regarding Carr's compensation, bonuses, and PTO is a core issue in the DCF Lawsuit against them. DCF alleges the Former Directors both "knew" and "should have known" about Carr's total compensation. *See* DCF Complaint, ECF No. 1-3, at ¶¶ 163, 179-80, and 187.[5]

When and what an insured knew about a loss or potential loss is a question of fact. *See Boran Craig Barber Homes, Inc. v. Mid-Continent Cas. Co.*, 2009 WL 20670850 (M.D. Fla. Feb. 19, 2009) (denying summary judgment application of the known loss doctrine, concluding whether the insured "had actual knowledge of a loss or [whether] there was a substantial probability the loss would occur[,]" prior to the date of the insurance application was a question of fact to be determined at trial).

---

[5] The Former Directors are vigorously defending the claims DCF has made against them. *See* Defendants' Motions to Dismiss in the underlying DCF Lawsuit, *infra*, at n. 6.

Hanover has failed to allege facts in its complaint to show that the Known Loss doctrine eliminates any possibility of a duty to defend. Accordingly, Hanover has failed to state a claim in Count I relating to its duty to defend.

### D. <u>Stay of Count I and Count II</u>

As discussed above, Count I and Count II should be dismissed for failure to state a claim for relief. Alternatively, even *assuming arguendo* that Count I and Count II could survive a motion to dismiss, these counts should be stayed based on the court's inherent authority and its broad discretion in deciding whether to hear declaratory judgment actions under the Declaratory Judgment Act, 28 U.S.C. §2201.

A federal district court has the inherent authority "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Mid-Continent Cas. Co. v. Nassau Builders, Inc.*, 2017 WL 1191383, at *2 (M.D. Fla. 2017) (citing *Landis v. N. Am. Co.,* 299 U.S. 248, 254-55 (1936)). When addressing a declaratory judgment complaint, the court has "particularly wide latitude to exercise this authority because '[t]here is . . . nothing automatic or obligatory about the assumption of 'jurisdiction' by a federal court' to hear a declaratory judgment action.'" *Id*. (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995)).

The granting of relief under the Declaratory Judgment Act is discretionary. The Act provides: "[i]n a case of actual controversy within its jurisdiction . . . any

court of the United States . . . *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). The Supreme Court has recognized that:

> Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.... The statute's textual commitment to discretion, and the breadth of leeway we have always understood it to suggest, distinguish the declaratory judgment context from other areas of the law in which concepts of discretion surface.

*Wilton*, 515 U.S. at 286-87. Thus, unlike other types of cases where federal courts have a "virtually unflagging obligation" to exercise the jurisdiction conferred on them by Congress, the Declaratory Judgment Act "gives the federal courts competence to make a declaration of rights, [but] does not impose a duty to do so." *Nassau Builders, Inc.*, 2017 WL 1191383 at *2 (*citing Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328 (11th Cir. 2005)).

The DCF Lawsuit is currently being litigated in the state court. Each of the Former Directors is a defendant in that lawsuit. The subject matter of the DCF Lawsuit overlaps with the factual allegations being made by Hanover with respect to the alleged exclusions to coverage in the instant case. The Former Directors have moved to dismiss the complaint in the DCF Lawsuit because the allegations are insufficient to state a claim for relief. Copies of the Defendants' Motions to Dismiss

are attached as Exhibits A and B.[6] Thus, it is possible that the DCF Lawsuit may be dismissed as to the Former Directors, or that the complaint in the DCF Lawsuit may be amended.

Under these circumstances, even if Count I and Count II could survive a motion to dismiss, the Court should stay those Counts pending disposition of the DCF Lawsuit. *See Admiral Insurance Co., v. Shah & Associates, Inc.*, 2013 WL 3831331 (C.D. Cal. 2013) (where insurer sought to deny coverage based on prior knowledge exclusion and insured's alleged failure to disclose material information on application, and insured's knowledge of facts relating thereto would be at issue in underlying state court lawsuit, federal district court stayed entire action, including determination of duty to defend, pending disposition of underlying state court lawsuit).

## III.   Count III Should be Dismissed or Stayed

The "duty to indemnify is dependent upon the entry of a final judgment, settlement, or a final resolution of the underlying claims." *J.B.D. Const., Inc. v. Mid-Continent Cas. Co.*, 571 F. App'x. 918, 927 (11th Cir. 2014) (citation omitted).

---

[6] This court may take judicial notice of these pleadings in connection with Defendants' request that this action be stayed. *See Quinette v. Reed*, 2020 WL 864889 (11th Cir. Feb. 21, 2020); *Halmos v. Bomardier Aerospace Corp.*, 404 F. App'x 376, 377 (11th Cir. 2010) ("[A] district court may take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a Rule 56 motion."); *Markland v. Insys Therapeutics, Inc.*, 270 F. Supp. 3d 1318, 1323 (M.D. Fla. 2017) (taking judicial notice of publicly filed documents in ruling on motion to dismiss for lack of standing; *Termarsch v Argent Mortgage Co., LLC*, 2008 WL 1776592, *4 at n. 6 (M.D. Fla. 2008) (taking judicial notice of pleadings in other cases available on PACER).

Because an insurer's duty to indemnify "is dependent on the outcome of a case, any declaration as to the duty to indemnify is premature unless there has been a resolution of the underlying claim." *United Specialty Ins. Co. v. Tzadik Acquisitions, LLC*, 2019 WL 5110836, at *2 (M.D. Fla. Aug. 12, 2019). Moreover, the Eleventh Circuit has cautioned "against exercising jurisdiction over declaratory judgment actions where the 'apportionment of insurance coverage may never arise due to the lack of a judgment establishing the liability of the insured.'" *Id.* (quoting *Edwards v. Sharkey*, 747 F.2d 684, 686 (11th Cir. 1984) (per curiam)).

The DCF Lawsuit has not yet been resolved, and no judgment has been entered against any of the Former Directors. Accordingly, Hanover's request for a declaratory judgment regarding its duty to indemnify in Count III is not ripe. Count III should therefore be dismissed because it is premature and pursuant to the inherent authority and broad discretion of the court to decline to hear declaratory judgment claims. *See United States Liability Ins. Co. v. Stone Management, LLC*, 2009 WL 4015576 (M.D. Fla. 2009) (dismissing declaratory judgment action seeking declaration of no duty to indemnify based on exclusions like those asserted in the instant case).

Alternatively, in the event the court declines to dismiss Count III, the court should stay this case with respect to Count III pending disposition of the DCF Lawsuit. *See Tzadik Acquisitions, LLC*, 2019 WL 5110836  (staying insurer's

24

request for declaratory judgment regarding duty to indemnify pending disposition of underlying state court lawsuit); *Mid-Continent Casualty Company v. Gozzo Development, Inc.*, 2017 WL 3578846 (S.D. Fla. 2017) (same).

## IV.   **Adoption of Arguments of other Defendants**

To the extent any other defendant moves to dismiss the complaint based on arguments that would apply to the Former Directors, the Former Directors adopt such arguments as part of this motion.

## V.   **Conclusion**

Based on the foregoing, Defendants request that the complaint be dismissed in its entirety. Alternatively, if any portion of the complaint is not dismissed, Defendants request that the action be stayed pending disposition of the DCF Lawsuit.

Respectfully submitted,

   */s/James J. Dean*
James J. Dean
Florida Bar No.: 832121
Primary Email:   jdean@lawfla.com
Secondary Email:   tweiss@lawfla.com
Robert A. McNeely
Florida Bar No.: 42994
E-mail: rmcneely@lawfla.com
Secondary E-mail: clowell@lawfla.com
MESSER CAPARELLO, P.A.
2618 Centennial Place
Tallahassee, Florida 32308
Telephone: (850) 222-0720
*Attorneys for Defendants*

25

## **CERTIFICATE OF COMPLIANCE WITH WORD LIMIT**

This motion with incorporated memorandum of law complies with the word limitation of N.D. Fla. Loc. R. 7.1(f) and contains 6319 words, excluding the parts exempted by such rule.

/s/*James J. Dean*
James J. Dean

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished electronically using CM\ECF or email this 1st day of June, 2020, to the following:

SEAN M. McDONOUGH, ESQUIRE
Wilson Elser Moskowitz Edelman & Dicker LLP
111 North Orange Avenue, Suite 1200
Orlando, Florida 32801

s/ *James J. Dean*
James J. Dean