## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### Case No. 4:20-cv-00148-AW-CAS

HANOVER INSURANCE COMPANY

    Plaintiff,

    v.

FLORIDA COALITION AGAINST
DOMESTIC VIOLENCE, INC., a Florida not-
for-profit corporation; FLORIDA COALITION
AGAINST DOMESTIC VIOLENCE
FOUNDATION, INC., a Florida  not-for-profit
corporation; TIFFANY CARR; SANDRA
BARNETT; PATRICIA DUARTE; MELODY
KEETH; LAUREL LYNCH; ANGELA DIAZ-
VIDAILLET; SHANDRA RIFFEY; DONNA
FAGAN; THERESA BEACHY; SHERYL
SCHWAB; LORNA TAYLOR; and PENNY
MORRILL,

    Defendants.
_____/

## TIFFANY CARR'S MOTION TO DISMISS THE COMPLAINT OR STAY THE CASE UNTIL RESOLUTION OF THE UNDERLYING LITIGATION

Defendant Tiffany Carr, by and through undersigned counsel, files this

Motion to Dismiss the Complaint (ECF No. 1) filed by Plaintiff Hanover Insurance

Company ("Hanover") pursuant to the *Wilton-Brillhart* Abstention Doctrine or

alternatively, to Stay the Case Until Resolution of the Underlying Litigation, and

states the following in support:

1

## INTRODUCTION

Rushing to federal court 16 days after litigation began in state court, Hanover seeks through this suit to short-circuit the state-court's determination of various dispositive issues, disrupting two separate litigations initiated by two executive branch agencies of the State of Florida as well as the later filed state court coverage dispute, which has all the pertinent parties before it. The maneuver is a textbook example for application of the *Wilton-Brillhart* abstention doctrine satisfying all of the relevant factors in Supreme Court and Eleventh Circuit precedent counseling dismissal or stay in such circumstances.

## FACTUAL BACKGROUND

Hanover issued policy number LHJ-H138435-00 ("Policy" ECF No. 1-2 at 1), with a "Policy Period" from December 19, 2019 to December 19, 2020 (*id.*), covering up to $3 million dollars per occurrence (*id.* at 20). The policy applies to a "Claim" first made within the policy period. (*Id.* at 21). Claim is defined as follows:

> 1. Written demand received by an Insured for monetary or non-monetary relief including injunctive relief;
> 2. Civil proceeding commenced by the service of a complaint or similar pleading;
> 3. Criminal proceeding commenced by the filing of charges;
> 4. Formal administrative or regulatory proceeding commenced by the filing of charges, formal investigative order or similar document;
> 5. Arbitration or mediation proceeding commenced by the receipt of a demand for arbitration or mediation or similar document; or
> 6. Official request for Extradition; against an Insured Individual for a Wrongful Act, including any appeal therefrom;

7. Service of a subpoena on an Insured Individual identified by name pursuant to a civil, criminal, administrative or regulatory investigation, including when such Insured Individual is served with a target letter or similar document; or

8. Written request first received by an Insured to toll or waive a statute of limitations relating to a potential Claim described in A.1. through A.7. above;

(*Id.* at 21-22).

On March 4, 2020, the Florida Department of Children and Families ("DCF") and the Florida Office of Attorney General (the "AG") brought separate and simultaneous suits against Tiffany Carr and the Florida Coalition Against Domestic Violence ("Coalition") (among other defendants) (collectively referred to herein as the "Underlying Litigation").  (ECF Nos. 1-3 at 1, 1-12 at 1).  The Underlying Litigation, filed within hours of each other, basically seek the same relief—a claw back of some unspecified portion of Ms. Carr's compensation, which allegedly was paid with funds DCF gave to the Coalition.  (ECF No. 1-3 at ¶¶ 78-79, ECF No. 1-12 at ¶¶ 82, 92, 100.)

More specifically, the DCF Complaint asserts three causes of action against the Coalition for breach of contract, breach of implied duty of good faith and fair dealing, and breach of fiduciary duty, (ECF No. 1-3 at Counts, I, II, and III) and four causes of action against Ms. Carr for fraudulent concealment, fraudulent misrepresentation, negligent misrepresentation, and conspiracy (*id.* at Counts IV, V,

VI, and VII).  The AG Complaint alleges three substantive counts[1] for breach of fiduciary duty, unjust enrichment, and constructive trust against Ms. Carr.  (ECF No. 1-12 at Counts III, IV, and V).

Both Complaints in the Underlying Litigation allege that DCF was obligated by statute to contract with the Coalition as a pass-through agency to distribute funds to Florida's 42 certified domestic violence shelters.  (ECF No. 1-3 at ¶ 20; ECF No. 1-12 at ¶ 14 (citing §§ 39.902(1), 39.903(7), 39.035, 39.904, 39.905, Fla. Stat. (2019))).  The AG Complaint provides details on the executive compensation process at the Coalition, according to the bylaws (attached to the AG Complaint, but not to Hanover's Complaint).  Ms. Carr's[2] compensation, including paid time off, was set forth in valid employment agreements written in plain English and was, at all times, voted on and approved by the Board.  ECF No. 1-12 at ¶¶ 20, 41.  The AG Complaint further alleges that the Coalition's "Board acted incompetently" because "[d]espite the clarity of [the Coalition]'s compensation memoranda," Board

---

[1] The AG Complaint's first two counts were for the appointment of a receiver, Count I as to the Coalition and Count II as to the Florida Coalition Against Domestic Violence Foundation (the "Foundation").  Mark Healy has been appointed as a receiver for both the Coalition and Foundation.

[2] Ms. Carr served as the Coalition's President and Chief Executive Officer until November 2019.  (ECF No. 1-12 at ¶ 6.)

members were "shocked by the amount of PTO awarded to Ms. Carr."  ECF No. 1-12 at ¶ 42.

Hanover brought this action 16 days after the Underlying Litigation Commenced (ECF Nos. 1-3 at 1, 1-12 at 1), even before responses in either of the cases were due (*see, e.g.*, Fla. R. Civ. P. 1.140(a) ("answer within 20 days after service")), and cites eight exclusions from the policy, related communications, and Florida law that it claims bars coverage and the alleviates it from its duty to defend.

Specifically, Hanover requests determinations on the applicability of six Policy exclusions and two common law doctrines (Uninsurable and Known Loss). Three of the exclusions (Prior Litigation/Demand, Policy Application, and Policy Claim), together with Known Loss, center on the factual dispute over whether DCF's consulting engagement with the Coalition was actually an "investigation" as described in the DCF Complaint (*e.g.*, ¶ 24) and Hanover's Complaint (e.g. ¶¶ 3-4). These factual issues contend with various communications between DCF and the Coalition, many of which are attached to Hanover's Complaint, wherein DCF indicated it "will conduct a consulting engagement related to administrative costs and executive compensation of the" Coalition.  (ECF No. 1-6 at 1)

Hanover also seeks a determination of the applicability of the Policy's Fraud Exclusion and the Profit Exclusion.  Both of these exclusions, however, are specifically exempted from the duty to defend:

However, ***this exclusion shall not apply to Defense Expenses*** unless and until a final, non-appealable judgment or adjudication in any underlying proceeding or action establishes that an Insured committed such an act or omission, violation of statute or regulation or gained such profit, remuneration or advantage to which the Insured was not legally entitled.

(ECF No. 1-2 at 25 (emphasis added)).

Finally, Hanover seeks a determination that the Contract Exclusion applies because one of the three counts against the Coalition in the DCF Complaint is "based upon, arising out of or in any way related to liability on account of, any oral or written contract or agreement." (¶ 119).

On June 3, 2020, the Coalition filed suit against Hanover, Travelers Casualty and Surety Company of America ("Travelers"), Tiffany Carr, Sandra Barnett, Patricia Duarte, Melody Keeth, Laurel Lynch, Angela Diaz-Vidaillet, Shandra Riffey, Donna Fagan, Theresa Beachy, Sheryl Schwab, Lorna Taylor, Penny Morrill, the Foundation, the AG, and DCF ("State Coverage Suit" attached as **Exhibit A**). The State Coverage Suit seeks declaratory relief pursuant to section 86.011, Florida Statutes, regarding Hanover and Travelers' duty to cover the claims related to the underlying lawsuits noting that the two insurance companies take inconsistent positions "TRAVELERS contends there is no "Claim" during the policy period, but HANOVER contends all of the events giving rise to a "Claim" preceded its policy period." Exh. A at ¶ 37; *id.* at ¶¶ 29–40, 51–62. The State Coverage Suit also seeks relief against Hanover and Travelers for breach of contract. *Id.* at ¶¶ 41–50, 63–71.

The State Coverage Suit remains pending Judge Carroll, of the Second Judicial Circuit of the State of Florida, the same judge presiding over the DCF Complaint.

## LEGAL STANDARD

The Supreme Court has cautioned District Courts to abstain from exercising jurisdiction in certain declaratory actions. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 281-82 (1995) (the Declaratory Judgment Act is an "enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant."); *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942) (District Court "should ascertain whether the questions in controversy . . . can better be settled in the proceeding pending in the state court").

The Eleventh Circuit has supplied several non-exclusive factors for district courts to consider when applying the *Wilton-Brillhart* Abstention Doctrine. *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1332 (11th Cir. 2005) (in the declaratory-judgment context, "the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judgment").

The Court may take judicial notice of public records at the dismissal stage. *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1280 (11th Cir. 1999). The Court may also consider the facts contained in the complaint as well as attached exhibits

and documents referred to in the complaint that are central to the claim.   *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005).

## ARGUMENT

Federal courts are under no duty to make a declaration of rights.  "In fact, in cases such as this, the Supreme Court has expressed that 'it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties.' "  *Ameritas*, 411 F.3d at 1330 (quoting *Brillhart*, 316 U.S. at 495).

The Supreme Court's admonishment came in the midst of a federal-forum coverage dispute with a pending state law claim, and the Court identified several factors for the District Court to consider in whether to proceed with the declaratory judgment action: 1) the scope of the pending state action and the nature of defenses there; 2) whether the claims of all parties in interest can satisfactorily be adjudicated in state court; 3) whether necessary parties have been joined; and 4) whether such parties are amenable to process in that proceeding.  *Brillhart*, 316 U.S. at 495.

The Eleventh Circuit has provided nine factors as guideposts to determining whether this Court should exercise its discretion to entertain a declaratory judgment action:

(1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;

(2) whether the judgment in the federal declaratory action would settle the controversy;

(3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;

(4) whether the declaratory remedy is being used merely for the purpose of "procedural fencing"—that is, to provide an arena for a race for res judicata or to achieve a federal hearing in a case not otherwise removable;

(5) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;

(6) whether there is an alternative remedy that is better or more effective;

(7) whether the underlying factual issues are important to an informed resolution of the case;

(8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

(9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Ameritas*, 411 F.3d at 1331.

There is no requirement that the parties be identical between the federal and state cases. *Falls Lake Nat'l Ins. Co. v. Am. Shuttle, Inc.*, No. 17-24421, 2018 WL 8244524, at *3 (S.D. Fla. Aug. 13, 2018) ("All of the Defendants in the federal action are named parties in the Underlying Action. Second, the issues are sufficiently similar. The relationships between the various entities and their respective liability are at issue in the Underlying Action such that the state court's determination may impact the interpretation of the Parties' respective rights under the Policy. Because

9

the Parties and issues are sufficiently similar, the Court considers the *Ameritas* factors in determining whether to declare the rights of the parties."); *see also Rhein v. Kevelson*, No. 14-61830, 2014 WL 6694744, at *4 (S.D. Fla. Nov. 26, 2014) ("there is no requirement in *Ameritas* that the state and federal actions involve the exact same parties."); *Geico Gen. Ins. Co. v. Hampel*, No. 11-61620, 2011 WL 13217490, at *1 (S.D. Fla. Nov. 1, 2011) (dismissing under abstention doctrine due to forum shopping on part of federal plaintiff in declaratory action against an otherwise non-removable state-court case and finding all nine *Ameritas* factors met). *See also Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 812 (6th Cir. 2004) ("We have repeatedly held in insurance coverage diversity cases that declaratory judgment actions seeking an advance opinion on indemnity issues are seldom helpful in resolving an ongoing action in another court and such actions . . . should normally be filed, if at all, in the court that has jurisdiction over the litigation which gives rise to the indemnity problem.") (citations omitted).

Moreover, the filing order of the relative state and federal actions does not matter. *Geico Gen. Ins. Co. v. Kastenolz,* 649 F. App'x 647, 650 (11th Cir. 2016) ("the *Ameritas* factors presuppose the existence of a prior filed federal declaratory action"); *see also Ven-Fuel, Inc. v. Dep't of the Treasury,* 673 F.2d 1194, 1195 (11th Cir. 1982) ("In its discretion, a district court may decline to entertain a declaratory judgment action . . . [when it] was filed in apparent anticipation of the other pending

proceeding."); *Mt. Hawley Ins. Co. v. Sarasota Residences, LLC*, 714 F. Supp. 2d 1176, 1181 (M.D. Fla. 2010) ("Given that this Court must balance similar principles, along with questions of federalism, in determining whether to retain jurisdiction in a declaratory judgment action, it does not follow that the first-filed rule would control in this instance.")

Finally, "the Court has no obligation to consider each and every factor on the list . . . ." *Bright House Networks, LLC v. Pinellas Cnty.*, No. 14-1237, 2014 WL 4794786, at *8 (M.D. Fla. Sept. 25, 2014); *see also Great Lakes Reinsurance (UK) PLC, TLU Ltd.*, 298 F. App'x 813, 815 (11th Cir. 2008) ("We . . . have upheld a district court's refusal to assert jurisdiction where the district court had considered only two of the factors . . . .").

## A. *Ameritas* Factors Counsel in Favor of Dismissal

### 1. *The Strength of the State's Interest.*

This factor weighs completely in favor of dismissal, and a more lopsided case in the strength of the state's interest is difficult to imagine. The Underlying Litigation was brought by two separate executive agencies by the State of Florida—headed by two different state-wide elected offices.

Florida's lawsuits in the Underlying Litigation follow months of investigation by the Florida House of Representatives, which was chronicled in statewide media outlets with near daily updates. *See, e.g.*, Public Integrity & Ethics Committee,

https://www.myfloridahouse.gov/Sections/Committees/committeesdetail.aspx?Co mmitteeId=2999.

Shortly after the Underlying Litigation began, a receiver was appointed, responsible for monthly reports to Judge Flury of the Second Judicial Circuit of the State of Florida and implicating the constant oversight of these issues by Florida's judicial branch. Therefore, all three branches of Florida's government are invested in this politically sensitive and important case.

And of course, as is true in every coverage case, the actual coverage issues themselves are state-law issues, with no particular federal interest. Those issues are better suited to determination in the State Coverage Suit, which Hanover clearly anticipated when it filed this case, and has all the appropriate parties in front of it for full adjudication of the relevant issues. Thus, the state court's interest in keeping the resolution of the issues in the state court is extraordinarily strong in this case with no counterweight in federal interest.

2. *Whether the Federal Action Would Settle the Controversy.*

That this action will not fully settle the controversy is evident. *See, e.g.*, *Bituminous Cas. Corp.*, 373 F.3d at 814 ("A declaratory judgment would not resolve the insurance coverage controversy here. On the contrary, as we have seen, the judgment in federal court declaring that Shields was an employee was contrary to two state court findings that Shields was not an employee, complicating the

underlying issues of liability. . . . Therefore, this factor weighs against exercising jurisdiction."); *United Rentals, Inc. v. Auto-Owners Ins. Co.*, No. 07-267, 2007 WL 2695822, at *2 (M.D. Fla. Sept. 10, 2007) ("Finally, no resolution of the insurance coverage issue in this action settles the entire controversy in the Helmer action, but a resolution of the liability issue in the Helmer action renders this action superfluous.").

In this case, the exclusions Hanover attempts to apply are all based on two factual questions: (1) the nature of the consulting agreement with DCF and whether it was an investigation or normal communications between contractual counterparties, and (2) whether Ms. Carr (and/or others) were legally entitled to the compensation they received, and if not, what legal theory that compensation could be clawed back by the State of Florida or the Coalition. Hanover would be obligated to indemnify under certain factual determinations and not under others, thus dismissal is proper. *Great Lakes Reinsurance*, 298 F. App'x at 816-17 ("it is clear that factual issues, including whether the Insureds made material omissions in their application, and whether the type of damage the Insureds' vessel sustained would be covered by the policy, would be important to the resolution of the federal case").

Even Hanover's request for a determination as to the duty to defend is premature as this case was filed before responsive pleadings were due in the Underlying Litigation, motions to dismiss are pending in the state courts, and those

complaints are likely to be amended as the litigation continues.  A determination of the duty to defend is likely to be affected by the amended complaints.  Thus, a premature determination of the duty to defend here in favor of Hanover, would likely be undone through the amendment of the complaints in the state courts.

Further, as is apparent from the State Coverage Suit, Hanover's Complaint leaves issues unresolved, such as the scope of Travelers' responsibility for coverage for the same transactions and occurrences and whether either insurance company breached their contractual duties.  Thus, this suit should be dismissed and the state court litigation should be allowed to run its course.

3.  *Whether the Federal Action Would Serve a Useful Purpose.*

Although a declaratory judgment may clarify the legal relationship between Hanover and the insureds, it would not clarify anything between the insureds and the opposing parties in the state court litigation.  *See, e.g.*, *Bituminous Cas. Corp.*, 373 F.3d at 814.  Thus, assuming Hanover prevails in this action and has no duty to defend or indemnify in the state court actions, and then the state courts make a contrary factual determination that implicates indemnification from Hanover, that would simply reignite the dispute between Hanover and the insureds at a later time. This possibility segues into the next factor as it reveals a possible motivation for Hanover's rush to this Court after the state court actions were filed.  Moreover, as noted above, there remains more issues to be resolved in the State Coverage Suit.

4.  *Procedural Fencing.*

Hanover's maneuver of filing this declaratory action only 16 days after the Underlying Litigation was filed and before the easily anticipated State Coverage Suit screams of procedural fencing.  *Great Am. Ins. Co. v. Houston Gen. Ins. Co.*, 735 F. Supp. 581, 585 (S.D.N.Y. 1990) ("The mere fact that Great American managed to get to a courthouse before Houston General and to obtain a stay of further litigation is not a reason for this Court to entertain its declaratory judgment action.").  Indeed, the intent of the declaratory judgment action is not to provide an alternative forum, but to provide a means to obtain judicial intervention without forcing the declaratory judgment plaintiff to be subject to the "whim of its opponent in deciding when to resolve the legal dispute between them."  *Id.*; *see also Sunrise Senior Living, Inc. v. APB, Inc.*, No. 06-80674, 2006 WL 2852853, at *3 (S.D. Fla. Oct. 3, 2006) (suit dismissed where filed "strictly for purposes of 'procedural fencing,' *Ameritas* factor four tips strongly and conclusively in favor of dismissal."); *Clark Const. Group, LLC v. Travelers Excess & Surplus Lines Co.*, 470 F. Supp. 2d 1350, 1353 (M.D. Fla. 2006) ("Courts have repeatedly discouraged such forum-racing.").

Hanover's race to federal court is a shameless forum grab, and such tactics should be discouraged through dismissal of this case.

5. *Friction Between Federal and State Courts.*

The analysis under this prong implicates the analysis under the first *Ameritas* prong. A federal declaratory action would clearly encroach on state jurisdiction to hear and decide the factual issues brought by two executive agencies of the State of Florida in its two separate actions against the Coalition and Carr and thus increase the friction between state and federal courts. Again, all three branches of Florida's government have involved themselves in the issues presented by this case. Further, the federal declaratory action is likely to encroach on the factual determinations necessary in the Underlying Litigation and certainly it will upend aspects of the State Coverage Suit.

6. *Alternative Remedy.*

Hanover has a fully available alternative remedy: wait for the Underlying Litigation to resolve and then use the state court's findings to determine the coverage issues presented State Court Litigation. *Bituminous Cas. Corp.*, 373 F.3d at 816 ("In addition, a superior alternative remedy exists in the form of an indemnity action filed at the conclusion of the underlying state action."). Indeed, waiting is required for the indemnity claim. *Atl. Cas. Ins. Co. v. GMC Concrete Co., Inc.*, No. 07-0563, 2007 WL 4335499, at *2 (S.D. Ala. 2007) ("[A]n insurers duty to indemnify is not ripe for adjudication in a declaratory judgment action until the insured is in fact held liable in the underlying suit.") (citations omitted); *see also Southern Coatings, Inc.*

*v. Century Sur. Co.*, No. 07-80558, 2008 WL 954178, at *4 (S.D. Fla. 2008); *Penn Millers Ins. Co. v. AG-Mart Produce, Inc.*, No. 051852, 2006 WL 2864402, at *1 (M.D. Fla. 2006); *Northland Cas. Co. v. HBE Corp.*, 160 F. Supp. 2d 1348, 1360 (M.D. Fla. 2001).

In addition, as noted above, the duty to defend issues presented in Hanover's complaint are likewise premature as the litigation in the state courts is just getting started.  Moreover, Hanover could simply proceed in the State Coverage Suit (and for that matter simply have waited the less than three months for the State Coverage Suit to be filed).

### 7.  *The Necessity of the Underlying Factual Issues.*

All of Hanover's declaratory counts are premised on the various exclusions cited in the Complaint that in turn, implicate the factual determinations keyed up in the Underlying Litigation.  For example, Hanover cites the Prior Litigation/Demand, Policy Application, Policy Claim, and Known Loss exclusions seeking a determination from this Court that DCF's consulting engagement was actually an investigation that should have been disclosed to Hanover.  However, the State Court has to contend with these same issues in order to determine whether the Coalition was in breach of its contract or fiduciary duties (*e.g.*, ¶¶ 48, 63-67), and what duty Ms. Carr and others owed individually to disclose certain salary information to DCF as DCF alleges in its Complaint (¶¶ 71-79, 88-92)

Thus, Hanover's Complaint implicates the issues in contention in the Underlying Litigation pending in state-court, and a dismissal or stay would be appropriate to allow the state court adjudication to run its course without risk of interference from Hanover's declaratory action. *Great Am. Ins. Co. v. Lorch*, No. 12-03479, 2013 WL 12062839, at *6 (N.D. Ga. May 2, 2013) ("Both this Court and the state action have the same factual question before it: whether [state-court defendant] was acting within the scope of his employment.").

Further, Hanover's Complaint is fully captured by the State Coverage Suit, which is now pending before the same Judge who has the DCF Complaint. *See, e.g.*, *Mt. Hawley Ins.*, 714 F. Supp. 2d at 1181 ("Finally, there is less chance for inconsistent verdicts if the same judge hears all cases pending in state court. In short, this Court abstains from declaratory judgment action because the state court can more efficiently settle this controversy."). Thus, any factual issues that arise are much more readily resolved in state court where all the parties and issues are present and subject to jurisdiction of those courts.

8. *Suitability of the State Trial Court.*

The state court is clearly in a better position to evaluate factual issues than this Court because the counterparty to the contracts, DCF, and one of the funding agencies to the Coalition, the AG, are the plaintiffs in the Underlying Litigation. Further, a receiver is appointed in the AG case, who submits monthly reports to the

18

Second Judicial Circuit. Moreover, the State Coverage Suit, unlike Hanover's Complaint, comprehensively brings all the parties and all of the issues into the same court house. Thus, the state court is far better suited to resolve the issues presented in Hanover's Complaint.

9. *A Close Nexus Between the Issues and State Law and Policy.*

In the normal insurance declaratory action, there is "no special call on the federal forum" as the policy issues are all state law and no federal law is implicated. *See, e.g.*, *Certain Interested Underwriters at Lloyd's London v. Jindani*, No. 09-1414, 2009 WL 5171755, at *2 (M.D. Fla. Dec. 23, 2009) (" '[t]he desire of insurance companies . . . to receive declarations in federal court on matters of purely state law has no special call on the federal forum' ") (quoting *State Auto Ins. Cos. v. Summy*, 234 F.3d 131, 136 (3d Cir. 2000)); *see also Falls Lake Nat'l Ins. Co.*, 2018 WL 8244524, at *4 ("Finally, there is a close nexus between the underlying factual and legal issues and state law (factor 9)—the Policy is governed by Florida law and the only basis for jurisdiction in this Court is diversity.").

However, this case is an extraordinary example of the desire of the State of Florida to have its interests heard in the forum of its choice. Florida's executive branch has filed two separate lawsuits, on the same day, following months of press and a public investigation by the Florida House of Representatives Public Integrity & Ethics Commission. Further the state court has already appointed a receiver in

the Underlying Litigation. Moreover, this case involves unsettled questions of state law with recent legislative action affecting the parties' legal status in the Underlying Litigation (Ch. 2020-6, Laws of Fla.), and prior to that an unusual and unlitigated feature of Florida law designating the Coalition as the sole source contractual counterparty to DCF (ECF No. ¶ 63 ("As a result of being a single source provider, mandated by Florida law, [the Coalition] owed DCF a fiduciary duty.")) with specific provisos in the general appropriations act also designating the Coalition as the recipient of funds appropriated to DCF. *See, e.g.*, Ch. 2018-9, Laws of Fla. at 77. Thus, the duties alleged in the Underlying Litigation are complicated issues of Florida law that are best left to the state forum to decide in the first instance.

Therefore, while the federal interests in the coverage issues is always low in a declaratory action of this sort, the state interests in this particular case are high and counsel in favor of dismissal or staying the case until the coverage issues become ripe.

## CONCLUSION

For the foregoing reasons, Hanover's Complaint should be dismissed in favor of the state forum, or alternatively, this Court should stay this case until the state courts have decided the underlying factual issues.

Respectfully submitted this 8th day of June, 2020,

By: */s/ Joshua M. Hawkes*
    James A. McKee
    Florida Bar No. 638218
    jmckee@foley.com
    Joshua M. Hawkes
    Florida Bar No. 112539
    jhawkes@foley.com
    **FOLEY & LARDNER LLP**
    106 East College Avenue
    Tallahassee, FL 32301-7732
    Telephone: (850) 222-6100
    Facsimile: (850) 561-6475

## CERTIFICATE OF SERVICE

I hereby certify that, on June 8, 2020, a true and correct copy of the foregoing was filed with the Northern District of Florida via cm/ecf system and served on the below service list via e-mail.

_/s/ Joshua M. Hawkes_
Joshua M. Hawkes

## <u>SERVICE LIST</u>

Sean M. McDonough
sean.mcdonough@wilsonelser.com
Wilson Elser Moskowitz Edelman & Dicker LLP
111 North Orange Avenue Suite 1200
Orlando, Florida 32801
407-203-7599 - Phone
407-648-1376 - Facsimile

_Attorneys for Plaintiff, Hanover Insurance Company_