UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

HANOVER INSURANCE COMPANY,

      Plaintiff,

v.                                CASE NO.: 4:20-cv-00148-AW-CAS

FLORIDA COALITION AGAINST
DOMESTIC VIOLENCE, INC., a
Florida not-for profit corporation;
FLORIDA COALITION AGAINST
DOMESTIC VIOLENCE FOUNDATION, INC.,
A Florida not-for profit corporation;
TIFFANY CARR; SANDRA BARNETT;
PATRICIA DUARTE; MELODY KEETH;
LAUREL LYNCH; ANGELA DIAZ-VIDAILLET;
SHANDRA RIFFEY; DONNA FAGAN;
THERESA BEACHY; SHERYL SCHWAB;
LORNA TAYLOR; and PENNY MORRILL,

      Defendants.

_____/

## DEFENDANT SANDRA BARNETT'S
## MOTION TO DISMISS AND/OR STAY PLAINTIFF'S COMPLAINT

Defendant SANDRA BARNETT, pursuant to Rules 12(b)(1) and 12(b)(6),
Fed. R. Civ. P., and the inherent authority of the court, requests that the Court
dismiss the complaint filed by Hanover Insurance Company ("Plaintiff" or
"Hanover"). Alternatively, Defendant requests that this case be stayed pending
the disposition of *Florida Department of Children and Families v. Florida*

*Coalition Against Domestic Violence, Inc.,* et. al., Case No. 2020-CA-00431 (filed March 4, 2020, pending in the Circuit Court in Leon County ("DCF Lawsuit").

### MEMORANDUM OF LAW

Defendant is the former Chief Operating Officer of the Florida Coalition Against Domestic Violence, Inc. ("FCADV"). She is named as an individual defendant in the DCF Lawsuit. Hanover filed the instant case in this Court seeking a declaratory judgment with respect to its duty to defend (Counts I and II) and duty to indemnify (Count III) the Defendant, among others, in the underlying DCF Lawsuit.[1] Counts I and II of Hanover's Complaint should be dismissed as to Defendant for failure to state a claim under Rule 12(b)(6). Count III should also be dismissed as the claim is not ripe. Alternatively, all Counts of Hanover's Complaint should be stayed pending the disposition of the underlying DCF lawsuit.

### I.    Counts I and II Should be Dismissed for Failure to State a Claim as to Defendant.

---

[1]    Throughout its Complaint, Hanover references two separate lawsuits, sometimes collectively referring to both lawsuits as the "State Litigation." The first is the DCF Lawsuit, which names Defendant, along with FCADV, two other former employee-officers of FCADV, and nine of the former members of the FCADV Board of Directors. The second lawsuit is styled *Office of the Attorney General, State of Florida, Dep't of Legal Affairs v. Florida Coalition Against Domestic Violence, Inc.* Case No. 2020 CA 000437 (filed March 4, 2020) ("AG Lawsuit"). Defendant is not a party to the AG Lawsuit.

In Count I of its Complaint, Hanover seeks a declaratory judgment that it has no duty to defend any of the parties named as defendants in either the DCF Lawsuit or the AG Lawsuit.  Count II of the Complaint is based on Hanover prevailing in Count I, and seeks a declaratory judgment that Hanover recoup severally from the defendant parties any defense costs paid related to either suit.

### A. Standard on a Motion to Dismiss for Failure to State a Claim

In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face.'" *Ashcroft v Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." *Iqbal,* 566 U.S. at 678. Further, in determining facial plausibility, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]' - 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "Where a complaint pleads facts that are 'merely consistent with' the defendant's liability, it 'stops short of the line between possibility and plausibility of

3

entitlement to relief.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557).

While factual allegations must be accepted as true, the same is not true for legal conclusions. Courts are not "bound to accept as true a legal conclusion couched as a factual allegation" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 566 U.S. at 678. Therefore, this Court should engage in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

B.  Hanover's Duty to Defend

"Under Florida law, the issue of a liability insurer's duty to defend a lawsuit against its insured is governed by the terms of the insurance policy and the allegations of the complaint." *Colony Ins. Co. v. Barnes*, 410 F. Supp. 2d 1137, 1139 (N.D. Fla. 2005). This is sometimes referred to as the "eight corners" rule, as the relevant inquiry concerns only the four corners of the complaint and the four corners of the policy. *Id.* "If the complaint alleges any claim that, if proven, might come within the insurer's indemnity obligation, the insurer must defend the entire action. *Id.* Simply stated, if the underlying complaint alleges multiple grounds for liability, so long as at least one of them is within the insurance

coverage, the insurer must defend the entire suit.

The insurer's duty to defend exists even if the complaint's allegations are factually incorrect or meritless and even if part of the allegations fall outside policy coverage. *Addison Ins. Co. v. 4000 Island Boulevard Condo. Ass'n*, 721 F. App'x 847, 854 (11th Cir. 2017).   Even if the existence of extrinsic facts might establish that coverage does not exist, the duty to defend relies on the allegations in the underlying complaint, not in any extraneous matters. *See Marr Invs., Inc. v. Greco*, 621 So. 2d 447, 449 (Fla. 4th DCA 1993) (holding that "the trial judge erred in considering extraneous matters in resolving the question as to the duty to defend.").[2]

Any doubts regarding the insurer's duty to defend arising out of the allegations in the underlying complaint are resolved in favor of the insured. *Colony Ins. Co. v. Barnes*, 410 F. Supp. 2d at 1139. Therefore, ambiguous

---

[2]    The Eleventh Circuit has recognized a limited exception to the eight corners rule, in which a court may consider extrinsic facts "if those facts are undisputed, and, had then been pled in the complaint, they clearly would have placed the claims outside the scope of coverage." *Stephens v. Mid-Continent Cas. Co.*, 749 F.3d 1318, 1323 (11th Cir. 2014). This exception, however, is limited to "exceptional cases in which courts have crafted an equitable remedy when it is manifestly obvious to all involved that the actual facts placed the claims outside the scope of coverage." *Id*. (quotation omitted). This exception is not applicable to the instant case, as the alleged facts relied upon by Hanover to assert its exclusions are being disputed by Defendant in this case and in the DCF Lawsuit.

allegations in the underlying complaint "must be construed most favorably to the insured to establish the duty to defend." *Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.*, 470 So.2d 810, 816 (Fla. 1st DCA 1985).

C. <u>Hanover's Policy and Alleged Exclusions</u>

Hanover admits that the applicable insurance policy was effective December 19, 2019, and that Defendant is an insured under the policy. *See* Complaint, ECF No. 1, pp. 1-2 at ¶1. Under the policy, coverage is provided for any "**Loss** which the **Insured Individual** is legally obligated to pay due to a **Claim** first made against the **Insured Individual** during the **Policy Period**…" *See* Hanover policy, ECF No. 1-2, p. 21, § I.A (emphasis in original). The definition of Claim under the Hanover policy, as applicable to Defendant, includes any:

> 1. Written demand received by an **Insured** for monetary or nonmonetary relief including injunctive relief;
> 2. Civil proceeding commenced by the service of a complaint or similar pleading;
>     . . . ..
> 4. Formal administrative or regulatory proceeding commenced by the filing of charges, formal investigative order or similar document;
> . . . .
> against an **Insured Individual** for a **Wrongful Act**, including any appeal therefrom[.]

*See id.*, pp. 21-22, at § III.A.

The Hanover policy defines a covered "Wrongful Act" as, *inter alia*, "any

6

actual or alleged act, error, omission, misstatement, misleading statement, neglect, breach of duty committed or attempted, or allegedly committed or attempted by . . . an **Insured Individual** in his or her capacity as such . . .." *See id.*, p. 24.

Pursuant to Florida Law, "insurance contracts must be construed in according with the plain language of the policy*." Swire Pacific Holdings, Inc. v. Zurich Ins. Co.*, 845 So.2d 161, 165 (Fla. 2003) (answering certified questions from the United States Court of Appeals for the Eleventh Circuit). Policy interpretation is a question of law decided by the court. Where the plain language of the policy is susceptible to more than one reasonable interpretation, the policy language is considered ambiguous. *Auto–Owners Ins. Co. v. Anderson*, 756 So.2d 29, 34 (Fla.2000). "An ambiguous policy must be 'interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy.'" *Travelers Indem. Co. v. PCR Inc*., 326 F.3d 1190, 1193 (11th Cir. 2003) (quoting *Hyman v. Nationwide Mut. Fire Ins. Co*., 304 F.3d 1179, 1186 (11th Cir. 2002). "Doubts are resolved in favor of the insured." *Colony Insurance Co.*, 410 F. Supp.2d at 113.  Where, as here, an insurer seeks to rely on an exclusion to deny coverage, the insurer is required to show that the exclusion clearly applies to the underlying complaint. *See Auto-Owners Ins. Co. v. Am. Bldg.*

*Materials, Inc.*, 820 F. Supp. 2d 1265, 1269 (M.D. Fla. 2011). An exclusionary clause is "construed even more strictly against the insurer than coverage clauses." *Travelers Indem. Co.*, 326 F.3d at 1193, quoting *Hyman*, 304 F.3d at 1196.

Hanover has identified six exclusions, along with two legal arguments, that it seeks to use to shirk its duty to Defendant to provide defense coverage in the DCF Lawsuit. Hanover's allegations, when examined through the framework of the 'eight corners' of the underlying allegations in the DCF Lawsuit and the Hanover insurance policy, fail to dispel "any doubt" that Hanover should be relieved of its duty to defend. Therefore, said doubt "must be resolved in favor of the insured" and Hanover should be required to defend.

### 1. *The Prior & Pending Litigation/Demand Exclusion*

The Prior & Pending Litigation/Demand Exclusion provides that there is no coverage for any claim "[b]ased upon, arising out of or in any way related to any litigation, administrative or arbitration proceeding, written demand pending against any Insured, or any order, decree or judgment entered prior to or on [December 19, 2019]." *See* Hanover policy, ECF No. 1-2, pp. 24-25, at § IV.A.2.

Hanover alleges that this exclusion applies based on allegations in the DCF Lawsuit that DCF sent correspondence to FCADV prior to December 19,

2019. The DCF Lawsuit alleges that on August 27, 2018, DCF sent a letter to FCADV notifying them that "DCF Office of the Inspector General (OIG) was initiating an investigation of FCADV's administrative costs and executive compensation.'" *See* Complaint, ECF No. 1, p. 12, ¶ 51 (quoting DCF Lawsuit). The DCF Lawsuit further alleges that the August 27, 2018 letter, and subsequent correspondence with FCADV, included a request for documentation...." *See, id.*, p. 12, at ¶ 52.

Hanover seeks to transform these pre-policy requests for documentation into a "written demand" as that term is used in the Prior & Pending Litigation/Demand Exclusion. This is simply not the case. As alleged in the DCF Lawsuit, all of the pre-policy correspondence "requested" documentation from FCADV. None of the pre-policy correspondence demanded that FCADV turn over the documents. The plain meaning of the term "demand" does not support Hanover's position that the pre-policy correspondence with DCF was a "written demand". As defined by the dictionary, demand means "an insistent and preemptory request, made as if by right."[3] None of the pre-policy correspondence between DCF and FCADV is worded in terms of a final demand, which promised negative consequences if not complied with.

---

3       *https://www.lexico.com/definition/demand*

Further, although the term "written demand" is not defined in the policy, it is used in the policy definition of "Claim", which provides that claims include any "[w]ritten demand received by an Insured for monetary or non-monetary relief including injunctive relief." When construing policy terms, pertinent provisions should be read *in pari materia*." *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So.2d 871, 877 (Fla. 2007).

Even if the pre-policy correspondence could in some way be construed to have been a "written demand" under the policy, the allegations contained in the DCF Lawsuit against Defendant are based on alleged fraudulent actions and/or misrepresentations that did not take place until January of 2020, after the policy was in place. Thus, no claim had arisen against Defendant until after the effective date of the policy, and the Prior & Pending Litigation/Demand Exclusion is inapplicable, at least as to Defendant.

It is clear that the requests for documentation from DCF to FCADV were not demands for monetary or non-monetary relief including injunctive relief. Based on this, the document requests from DCF do not qualify as written demands, as that term is used in the Prior & Pending Litigation/Demand Exclusions. At the very least, the meaning of the term "written demand" in the exclusion is ambiguous. Based on a strict reading of the exclusionary language,

and resolving said ambiguity in favor of finding coverage, Hanover has not shown that the Prior and Pending Litigation/Demand exclusion relieves it of its duty to defend.

### 2. *The Policy Application Claim Exclusion and the Policy Claim Exclusion*

As an alternative argument, Hanover seeks to relieve itself of its duty to defend based on the Policy Application Claim Exclusion. *See* Complaint, ECF No. 1, pp. 21 - 22, at ¶ 106.  That exclusion is based on section XI of the policy application, which asked whether "the **Insured** proposed for coverage" is "aware of any fact, circumstance, or situation that might reasonably be expected to result in a **Claim** that would fall within the scope of the proposed **Liability Coverage Parts**." *Id.*, p. 21, at ¶ 102; ECF No. 1-2. This question was answered in the negative. Hanover contends that this response was untruthful, based on the pre-policy correspondence exchanged between DCF and FCADV. Further, although not specifically argued, Hanover implies that the pre-policy correspondence between DCF and FCADV was a fact, circumstance, or situation that Defendant should have reasonably expected to result in a claim.

Similarly, Hanover also claims that it has no duty to defend based on the Policy Claim Exclusion which provides "If the **Application** contains any misrepresentations made with the intent to deceive or contains

misrepresentations which materially affect the acceptance of the risk or hazard assumed by the **Insurer**," then no coverage will be provided for any Claim "based upon, arising from, or in consequence of, any such misrepresentation with respect to" any **Insured** "who knew of such misrepresentations (whether or not such individual knew such **Application** contained such misrepresentations)." *See* Complaint, ECF No. 1, p. 22, at ¶ 107. Hanover's argument regarding this exclusion flows from its argument regarding the Policy Application Exclusion, that the Application contained a misrepresentation regarding the existence of a potential claim, and further, that the misrepresentation was made with the intent to deceive or was material to the issuance of the policy.

Both of these exclusions require prior knowledge on the part of Defendant. These types of prior knowledge exclusions "may be triggered under two circumstances: (1) if the insured "knew" that a wrongful act might be expected to be the basis of a claim; or (2) if the insured "could have reasonably foreseen" that a wrongful act might be expected to be the basis of a claim." *Feldman v. Imperium Insurance Company*, No. 8:14–cv–1637–T–30EAJ, 2015 WL 5854153, at *6 (M. D. Fla. Oct. 5, 2015). The first prong is subjective, requiring an insured to have actual knowledge. *Fid. Nat'l Title Ins. Co. v. Houston Cas. Co.*, No. 6:11–cv–1438, 2012 WL 4523666, at *5 (M. D. Fla. Sept. 30, 2012). The

second prong, however, has both an objective and subjective component. *Feldman*, 2015 WL 5845153, at *6. What is reasonably foreseen by an insured is an objective inquiry, but it must be based on facts subjectively known by the insured. *Id.*

There is no allegation in the DCF Lawsuit that Defendant had actual knowledge of any wrongful act prior to the policy effective date of December 19, 2019.  The first allegation that Defendant had actual knowledge of a wrongful act is not until after the effective date of the Policy whereinDCF alleges that Defendant, along with others, "provided false and incomplete documents…with either the intent to, or effect of, purposefully deceiving and misleading DCF…." Looking at the "eight corners" applicable to determining Hanover's duty to defend, there are no factual allegations that satisfy the subjective and objective components of these two "prior knowledge" exclusions.

Further, even if the DCF allegations could be construed to show that other insureds under the policy had prior knowledge of a potential claim, the plain language of the policy itself provides that [n]o statement in the Application, fact pertaining to, or knowledge possess by any Insured Individual shall be imputed to any other Insured Individual. *See* Hanover Policy, ECF No. 1-2, p. 30, at § XIV.A.2. Since the underlying complaint does not allege any prior knowledge on

the part of Defendant of any potential claim, Hanover has failed to show that either of these exclusions relieve Hanover of its duty to defend.

>   3.   *The Fraud Exclusion*

Hanover next seeks to assert a "Fraud" exclusion in order to avoid its duty to defend. Said "Fraud" exclusion is based on what the policy refers to as a "Conduct exclusion. *See* Complaint, ECF No. 1, pp. 22-24, at ¶¶ 110–117; Hanover policy, ECF No. 1-2, p. 25, at §§IV.A.3.a. and b.

Per the Conduct exclusion, there is no coverage for any Loss or Claim "[b]ased upon, arising out of or in any way related to [a]ny deliberate, dishonest, fraudulent act or omission, or willful violation of any statute or regulation by an **Insured**[.]" Hanover's assertion of the "Fraud" exclusion is based on the allegations of fraud found in the DCF Lawsuit. Specifically, three of the four counts brought against Defendant in the DCF lawsuit are for "Fraudulent Concealment," "Fraudulent Misrepresentation," and "Civil Conspiracy." *See* Complaint, ECF No. 1, p. 23, at ¶ 112. While the DCF Lawsuit does bring allegations of fraud against Defendant, an examination of those allegations shows that they fail to meet the pleadings requirements of both Florida and federal law.

Pursuant to Federal and Florida Rules of Civil Procedure, fraud must be

pled with particularity. *See* Fed. R. Civ. P. 9(b); Fla. R. Civ. P. 1.120(b). To state an action for fraud in Florida, the complaint must specifically identify a misrepresentation of fact, and also must identify when, where or the manner in which it was made. *Robertson v. PHF Life Ins. Co.*, 702 So.2d 555, 556 (Fla. 1st DCA 1997) ("Florida Rule of Civil Procedure 1.120(b) requires that allegations of fraud be pled with specificity" and must identify the time, place or manner in which the representations were made). The allegations contained in the DCF Lawsuit do not meet this standard, as they do not identify when alleged misrepresentations were made by Defendant, where the misrepresentations occurred, or the manner in which the misrepresentations came about.

Even if the allegations in the DCF Lawsuit were sufficient to state a cause of action for fraud, Hanover conveniently ignores the fourth count brought against the Defendant by DCF, for negligent misrepresentation. As noted above, if "the complaint alleges any claim that, if proven, might come within the insurer's indemnity obligation, the insurer must defend the entire action. *Colony Ins. Co. v. Barnes*, 410 F. Supp. 2d 1137, 1139 (N.D. Fla. 2005). Therefore, because Hanover is obligated to defend the negligence claim against Defendant, it is also obligated to defend all of the other claims in the DCF Lawsuit. *See, e.g., Century Sur. Co. v. Kid's Club Preschool, Inc.*, No. 4:10CV539-RH/WCS, 2011

WL 13118599, at *2 (N.D. Fla. May 28, 2011) (holding that where complaint alleges both negligence and intentional tort, insurer must defend entire lawsuit, notwithstanding exclusion for intentional acts).

Finally, per the plain language of the policy itself, the assertion of this Conduct Exclusion to relieve Hanover of its duty to defend is premature. In reference to the Conduct Exclusion, the policy provides:

> [T]his exclusion shall not apply to **Defense Expenses** unless and until a final, non-appealable judgment or adjudication in any underlying proceeding or action establishes that an **Insured** committed such an act or omission, violation of statute or regulation or gained such profit, remuneration or advantage to which the **Insured** was not legally entitled.

As there has been no judgment or adjudication in the DCF Lawsuit, the assertion of the Conduct exclusion by Hanover is premature and should be disregarded.

### 4.   *The Profit Exclusion*

Like the "Fraud" exclusion above, Hanover also asserts what it labels as the "Profit" exclusion based on the Conduct exclusion found in the policy. This second Conduct exclusion provides that there is no coverage for any claim involving "[a]n Insured gaining any profit, remuneration or advantage to which such Insured was not legally entitled[.]" See Hanover policy, ECF No. 1-2, p. 25, at § III.A.3.b.

To the extent that Hanover relies on allegations in the AG Lawsuit to assert this exclusion, those allegations are inapplicable to the Defendant and should be ignored. As explained above, Defendant is not a party to the AG Lawsuit, and therefore any allegations contained within said suit do not fall within the "eight corners" determination of whether or not Hanover has a duty to defend.

Hanover also relies on allegations in the DCF Lawsuit to make the "Profit" exclusion applicable to Defendant. An examination of these allegations show that they fail to meet the pleading standards of *Ashcroft v. Iqbal* and *Bell Atlantic Corp. v. Twombly*, meaning they cannot form the basis of a denial of Hanover's duty to defend. Those cases require complaints to contain factual allegations that are facially plausible and not just threadbare recitations of elements and legal conclusions. *Iqbal*, 566 U.S. at 678-79. And "where the well-pleaded facts do not permit the court to infer more than *the mere possibility of misconduct*, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (emphasis added).

As to Defendant, Paragraph 35 of the DCF Lawsuit alleges, "*Upon information and belief* [Defendant]...received a number of personal benefits, including, but not limited to, increased compensation and enhanced PTO." (emphasis added). This conclusory allegation lacks any sort of factual support in

the complaint. Paragraph 36 alleges, again without any shred of factual support that, *"Upon information and belief...*[Defendant]. . . received a number of personal benefits, including, but not limited to, increased compensation and enhanced PTO."* This is another conclusory allegation, unsupported by facts, that fails to meet the standards set out in *Iqbal* and *Twombly*. Finally, Paragraph 37 makes yet another conclusory allegation that Defendant, among others, acted as part of *"a scheme and conspiracy whereby board members who supported Ms. Carr's astronomical compensation received more funding from FCADV for their own centers, and in turn, the Defendants received higher executive salaries from their own boards."* This allegation does not appear to apply to Defendant, as she was not a board member nor did she run her own center. Even if this allegation could be construed to apply, once again there is not a single fact alleged in the complaint to support this allegation.

The allegations in the DCF Lawsuit, devoid of any factual support, show only "the mere possibility of misconduct." As such, said allegations cannot form the basis for asserting the "Profit Exclusion" and Hanover's arguments regarding it should be ignored.

Also, as with the previous "Fraud Exclusion", the terms of the policy provide that this Conduct exclusion is premature and that it shall not apply until

there is a final non-appealable judgment or adjudication in the underling proceeding. As there has been no judgment or adjudication in the DCF Lawsuit, the assertion of this "Profit Exclusion" is premature and should also be disregarded.

### 5. *The Contract Exclusion*

The Contract Exclusion applies only to FCADV. *See* Complaint, ECF No. 1, pp. 24-25, at ¶¶118-19. Thus, this exclusion does not apply to Defendant and is not addressed in this Motion.

### 6. *Loss Uninsurable as a Matter of Law*

Hanover next asserts that because the policy does not cover "any amount deemed uninsurable by law" that it is somehow relieved of its duty to defend. Hanover states in support of this argument that the "State Litigation seeks recovery solely of amounts that are restitution, disgorgement and/or the return of ill-gotten gains of improperly paid wages, bonuses and PTO" and that these losses are uninsurable under Florida law. Hanover provides no authority for its argument, nor is the argument supported by the allegations in the underlying complaint. The DCF Lawsuit does not seek "restitution, disgorgement, and/or the return of ill-gotten gains" from Defendant. Instead, all of DCF's request for relief against Defendant seek an "[a]ward of damages in an amount greater than

$30,000 [and] such other relief as this Court deems just and proper." Included in the claims against Defendant is a count for negligence, which is clearly covered by the policy. As such, Hanover's argument that the alleged loss is uninsurable is inapplicable to Defendant and does not absolve Hanover of its duty to defend.

### 7. *The Known Loss Doctrine*

The Known Loss Doctrine is based on the premise that the basic purpose of insurance is to protect against fortuitous events and not against known certainties. In Florida "an agreement to assume a known loss is not insurance." *Normandy Ins. Co. v. Sorto*, 276 So. 3d 337, 340 (Fla. 1st DCA 2018). Agreements to insure a known loss in Florida are void as a matter of public policy. *I.T.N. Consolidators, Inc. v. Northern Marine Underwriters, Ltd.*, 699 F. App'x 880, 885 (11th Cir. 2017).  Hanover alleges that this doctrine should apply because Defendant, and the other insureds, knew or should have reasonable known that a claim or injury had already occurred at the time that the policy was entered into. Hanover Complaint, ECF No. 1, pp. 25 - 26, at ¶ 123.

Hanover's argument, without any citation to authority, to apply the Known Loss Doctrine cannot and does not relieve it of its duty to defend. The assertion of this doctrine relies on Defendant's knowledge of the allegations contained in

the DCF Lawsuit, prior to the effective date of the policy at issue.   What Defendant knew or reasonably should have known, and when she acquired the actual knowledge, is one of the main issues in the DCF Lawsuit that has yet to be determined.

The DCF Lawsuit alleges that Defendant both "knew" or "should have known" about alleged misrepresentations regarding executive compensation. *See* DCF Complaint, ECF No. 1-3, at ¶¶ 103, 120, and 127. What Defendant knew about a claim or potential claim, and when she knew about it, is a question of fact. *See Boran Craig Barber Homes, Inc. v. Mid-Continent Cas. Co.*, 2009 WL 20670850 (M.D. Fla. Feb. 19, 2009) (denying summary judgment application of the known loss doctrine, concluding whether the insured "had actual knowledge of a loss or [whether] there was a substantial probability the loss would occur[,]" prior to the date of the insurance application was a question of fact to be determined at trial). Examining the "eight corners" relative to determining Hanover's duty to defend, the allegations in the DCF Lawsuit do not demonstrate that Defendant knew of a claim prior to the effective date of the policy. Until and unless the DCF Lawsuit results in such a finding, the assertion of the Known Loss Doctrine to absolve Hanover of its duty to defend is premature, and should be disregarded by this Court.

*8. Severability of Exclusions*

To the extent Hanover's assertions of policy exclusion relies in any way on alleged actions or inactions of any individual or entity other than Defendant personally, they cannot sever as basis for upholding any policy exclusions. Section V of the Policy, entitled SEVERABILITY OF EXCLUSIONS, provides:

> No conduct pertaining to any Insured Individual shall be impute to any other Insured Individual for the purpose of determining the applicability of these exclusions. Any conduct pertaining to any past, present or future Executive of an Insured Entity shall be imputed to such Insured Entity and its Subsidiaries.

Therefore, to the extent any allegations against Defendant are based on the alleged actions or inactions of the CEO, CFO or the board members, they may not be imputed to Defendant.

## II.   Alternatively, Counts I and II of Hanover's Complaint Should Be Stayed Pending Disposition of the Underlying DCF Lawsuit

Counts I and II of Hanover's complaint should be dismissed for failure to state a claim for relief. Even in the event that the Court determines that Counts I and II should not be dismissed, then these counts should be stayed based on the court's inherent authority and broad discretion in deciding whether to hear declaratory judgment actions under the Declaratory Judgment Act, 28 U.S.C. §2201.

A federal district court is afforded "broad discretion" in determining

whether to stay an action in the interests of justice, in control of its own docket, or "to avoid duplicating a proceeding already pending in another [] court." *I.A. Durbin, Inc. v. Jefferson Nat'l Bank*, 793 F.2d 1541, 1552 & n.13 (11th Cir. 1986). This discretion is particularly applicable in determining whether to entertain a declaratory judgment action. The Declaratory Judgment Act is "an enabling act, conferring discretion on courts than an absolute right upon the litigant." *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328 (11th Cir. 2005). As the Supreme Court has explained:

> Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants…. The statute's textual commitment to discretion, and the breadth of leeway we have always understood it to suggest, distinguish the declaratory judgment context from other areas of the law in which concepts of discretion surface.

*Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995).

In cases where there is concurrent state litigation on identical issues, as there appears to be here, federal courts should be hesitant to consider declaratory judgment actions. The Supreme Court has held that:

> Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided.

*Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495, 62 S. Ct. 1173, 1175-76, 86 L.Ed. 1620 (1942).

The DCF Lawsuit is already being litigated in state court. Many of the same factual issues presented by Hanover with respect to its alleged exclusions will also be issues of fact determined by the state court proceeding. Further, Defendant has moved to dismiss the complaint in the DCF Lawsuit.[4] Thus, it is possible that the DCF Lawsuit may be dismissed as to Defendant, or that the complaint in the DCF Lawsuit may be amended. Under these circumstances, even if the Court held that Count I and Count II should not be dismissed, the Court should stay those Counts pending disposition of the DCF Lawsuit. *See Southern-Owners Ins. Co. v. Wallace Sprinkler & Supply, Inc.*, 2014 WL 11511679 (N.D. Fla. Aug. 28, 2014) (Court found that it was appropriate for it to exercise its discretion to hear an insurer's declaratory judgment action while the state court action remained pending, and dismissed the case).

Further, FCADV has recently filed its own lawsuit in state court, naming, among others, Hanover, Traveler's Casualty and Surety Company of America (FCADV's prior directors and officer's insurance carrier), and Defendant as

---

4    A copy of Defendant's Motion to Dismiss the DCF Lawsuit is attached as Exhibit A.

24

parties to that action.[5] In this recently filed suit, FCADV brings counts for declaratory relief and for breach of contract against Hanover, as well as against Traveler's. The factual allegations at issue in the suit brought by FCADV against its insurers mirror the issues to be determined in the instant suit. In the interest of judicial efficiency, this Court should use its inherent authority to exercise discretion to stay the instant case until the state court litigation has been resolved.

III.     <u>Count III of Hanover's Complaint Should Be Dismissed or Stayed Pending Resolution of the Underlying DCF Lawsuit</u>

An insurer's duty to indemnify is "triggered when the insured becomes legally obligated to pay damages covered by the policy, that is, when there has been a final resolution of the underlying claims, whether by settlement or entry of a final judgment." *Morette Co. v. S-Owners Ins. Co.*, 301 F. Supp. 3d 1175, 1187 (N.D. Fla. 2017); *see also J.B.D. Const., Inc. v. Mid- Continent Cas. Co.*, 571 F. App'x. 918, 927 (11th Cir. 2014) ("duty to indemnify is dependent upon the entry of a final judgment, settlement, or a final resolution of the underlying claims."). Thus, "whereas the duty to defend is measured by the allegations of

---

5     *See Florida Coalition Against Domestic Violence v. Hanover Insurance Company,* et. al., Case No. 2020-CA-001044, filed June 3, 2020, pending in the Circuit Court in Leon County.

the underlying complaint, the duty to indemnify is measured by the facts as they unfold at trial or are inherent in the settlement agreement." *Northland Cas. Co. v. HBE Corp.*, 160 F.Supp.2d 1348, 1360 (M.D. Fla. 2001). Since the insurer's duty to indemnify is dependent on the outcome of a case, any declaration as to the duty to indemnify is premature unless there has been a resolution of the underlying claim." *Id.* Further, as noted above, parties do not have an absolute right to a declaratory judgment. "The Declaratory Judgment Act is 'an enabling Act, which confers discretion on courts rather than an absolute right upon the litigant.'" *Ameritas v. Variable Life Ins. Co*., 411 F.3d 1328, 1330 (11th Cir. 2005) (per curiam) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995)).

The underlying case, the DCF Lawsuit, is still in its infancy. There has been no judgment entered against Defendant, nor has there been any settlement agreement in that case. Hanover's duty to indemnify Defendant is unripe pending resolution of the underlying state court litigation. Should the Court find that Counts I and II are due to be dismissed, then the Court should also exercise its discretion to dismiss Count III.

However, if Counts I and II are not dismissed, then Count III should be stayed pending resolution of the DCF Lawsuit. "Where a premature request for

declaratory relief regarding the duty to indemnify is joined to a ripe request for declaratory relief regarding the duty to defend, a well-accepted practice is to retain jurisdiction over the latter request and stay, but not dismiss, the premature request." *Hartford Fire Ins. Co. v. Weathertrol Maint. Corp.*, No. 16–24509–CIV, 2017 WL 5643298, at *5 (S.D. Fla. Feb. 21, 2017); *see also United Specialty Ins. Co. v. Tzadik Acquisitions, LLC*, 2019 WL 5110836, at *2 (M.D. Fla. Aug. 12, 2019) (staying insurer's request for declaratory relief as to its duty to indemnify insured pending the resolution of the underlying state court lawsuit); *Mid-Continent Casualty Company v. Gozzo Development, Inc.*, 2017 WL 3578846 (S.D. Fla. Aug. 19, 2017) (same). Accordingly, this Court should stay Hanover's request for a declaratory judgment that it is not required to indemnify Defendant until such time as the underlying DCF lawsuit is resolved.

## IV.   Adoption of Arguments of Other Defendants

Defendant adopts any applicable arguments raised in the other defendants' motions to dismiss.

## V.   Conclusion

Based on the foregoing, Defendant requests that Count I and II of the complaint be dismissed and that Count III be stayed until the DCF Lawsuit is resolved. Alternatively, Defendant requests that the entire action be stayed pending disposition of the DCF Lawsuit.

Respectfully submitted this 8th day of June 2020.

COPPINS MONROE, P.A.

By: */s/ Zackery A. Scharlepp*

Zackery A. Scharlepp, FBN: 0058374
John J. Van Hise III, FBN 125151
1319 Thomaswood Drive
Tallahassee, Florida 32308
Telephone:  (850) 422-2420
Facsimile:   (850) 422-2730
zascharlepp@coppinsmonroe.com
jvanhise@coppinsmonroe.com
jclark@coppinsmonroe.com

ATTORNEYS FOR DEFENDANT
SANDRA BARNETT

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(b)(3) and N.D. Florida Local Rule 5.1, this document is being filed electronically and service shall be through the Court's transmission facilities on all persons appearing before this Court.

*s/ Zackery A. Scharlepp*