IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

HANOVER INSURANCE )
COMPANY )
                )
       Plaintiff, )
                )
v. )      No.: 4:20-cv-00148-AW-CAS
                )
FLORIDA COALITION AGAINST )
DOMESTIC VIOLENCE, INC., )
et al., )
                )
       Defendants, )
_____ )

## HANOVER INSURANCE COMPANY'S GLOBAL RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

Plaintiff Hanover Insurance Company ("Hanover"), files this global response in opposition to the separate Motions to Dismiss or Stay filed by the following defendants: (1) Florida Coalition against Domestic Violence, Inc. ("FCADV") [Dkt. #15]; (2) Tiffany Carr [Dkt. #19]; (3) Sandra Barnett [Dkt. #20]; (4) Patricia Duarte [Dkt. #17]; (5) Melody Keeth, Laurel Lynch, Angela Diaz-Vidaillet, Shandra Riffey, Theresa Beachy, Sheryl Schwab, and Penny Morrill [Dkt. #12]; and (6) Lorna Taylor[1] [Dkt. #24] (collectively, the "Defendants").

_____

[1] In lieu of a standalone motion, Taylor has filed a Notice of Joinder stating that she joins in the motion to dismiss filed by Keeth, Lynch, Diaz-Vidaillet, Riffey, Beachy, Schwab, and Morrill.

## I.    <u>INTRODUCTION</u>

This matter involves an insurance coverage dispute based on exclusions in a Nonprofit D&O Policy (the "Policy") issued by Hanover to FCADV, a Florida not-for-profit corporation that has received tens of millions of dollars in federal and state grant monies to help victims of domestic violence, pursuant to two Grant Contracts with the Florida Department of Children and Families ("DCF").

To prevent providing coverage for a proverbial "burning building," Hanover's Policy contains an exclusion from such coverage, commonly referred to as a Prior & Pending Proceedings Exclusion. This exclusion expressly avoids coverage for "any **Claim**...[b]ased upon, arising out of or in any way related to any" "litigation" or "*written demand* pending against any **Insured**"[2] prior to December 19, 2019. (Underlining and italics added).

However, based on undisputed facts, *five written demands* were made by DCF to FCADV prior to the inception of Hanover's Policy, and these demands form the basis for the underlying lawsuits filed by DCF and the Attorney General of Florida against Defendants ("the State Litigation").   As such, the Prior & Pending Proceedings Exclusion bars coverage for any **Insured**, including Defendants.

---

[2] **Bolded** terms shall be defined according to their definition in the Hanover Policy. *See* Ex. 1 to Hanover Complaint.

10820703v.2

Nevertheless, Hanover has offered to defend these Defendants from the State Litigation, subject to its right to reimbursement if there is no coverage, while at the same time seeking a declaration from this Court that no coverage for the State Litigation exists based upon the Prior & Pending Proceedings Exclusion. Defendants have moved to dismiss Hanover's coverage Complaint through a coordinated set of filings, which assert the following arguments that a dismissal or stay is warranted: (1) there is a duty to defend, notwithstanding the Prior & Pending Exclusion; (2) this Court should use its inherent authority to stay the case because it purportedly "overlaps" with the factual allegations in the State Litigation; (3) this Court should abstain and decline to accept jurisdiction over the present coverage dispute; and (4) not all interested parties are joined in this action. As none of these arguments are availing, Defendants' motion should be denied.

Regarding the first argument, Defendants ignore the standard for determining whether a declaratory judgment plaintiff has stated a claim upon which relief can be granted – the standard under Rule 12(b)(6). To state a claim for declaratory judgment, a plaintiff must only allege the existence of an "actual controversy." *Schwab v. Hites*, 896 F.Supp.2d 1124, 1132 (M.D. Fla. 2012). As Hanover has clearly identified an actual controversy regarding its duty to defend the Defendants, a motion to dismiss under Rule 12(b)(6) cannot succeed. Indeed, FCADV has conceded this point in its own, subsequently-filed lawsuit seeking

declaratory judgment (No. 4:20-cv-00309), wherein it expressly states that "an _actual controversy exists_ between HANOVER and FCADV." *See* FCADV Complaint (Exhibit A [Dkt. #19-1] to Carr's Motion to Dismiss), ¶37 (emphasis added).

Regarding the second argument, Defendants fail to properly state the applicable law. Pursuant to strong Florida policy embodied in *Higgins v. State Farm Fire & Cas. Co.*, 894 So.2d 5 (Fla. 2004), and its state and federal court progeny, not only is this declaratory judgment action ripe for immediate adjudication, but Hanover is entitled to prompt resolution of the question of its duty to defend the Defendants in the State Litigation. Moreover, because the key coverage issue framed in Hanover's Complaint for Declaratory Relief (*i.e.*, the existence of five "written demands" prior to the inception of the Hanover Policy and the application of the Prior & Pending Proceedings Exclusion) does not overlap with the liability or damages issues in the State Litigation in any way – let alone any meaningful way, there is no reason to postpone or stay resolution of this issue, including a determination of Hanover's duty to defend the **Insureds**.

As for Defendants' remaining arguments, abstention is not warranted under the *Colorado River* Doctrine, the governing standard here. Furthermore, Hanover has asserted a Crossclaim and Counterclaim in the FCADV Lawsuit and has moved to consolidate it into this action, which would join all potentially interested

- 4 -

parties to this dispute undermining the need for abstention. As Hanover has no duty to defend or indemnify any **Insured** for the State Litigation through the Prior & Pending Proceedings Exclusion, and an actual controversy exists, Hanover is entitled to a declaration of its rights, and the motions to dismiss or stay should be denied.

## II.   <u>ARGUMENT</u>

### A.   <u>Preliminary Issues</u>

#### 1.   *To Survive a Rule 12(b)(6) Challenge, Hanover's Declaratory Judgment Complaint Need Only State an "Actual Controversy"*

To prevail on a Rule 12(b)(6) motion, Defendants must show that Hanover's Complaint fails to "state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court must accept the material allegations of the complaint as true and draw all reasonable inferences in Hanover's favor. *Kirby v. Siegelman*, 195 F.3d 1285, 1289 (11th Cir. 1999). Dismissal at the 12(b)(6) stage is warranted only "when the factual allegations of the complaint affirmatively disprove the alleged cause of action." *Morse, LLC v. United Wisconsin Life Ins. Co.*, 356 F. Supp. 2d 1296, 1299 (S. D. Fla. 2005).

Defendants argue that Hanover's Complaint, when examined through the framework of the "eight corners" (*i.e.*, the DCF Lawsuit and the Hanover Policy), fails to dispel "any doubt" that Hanover should be relieved of its duty to defend, warranting dismissal under Rule 12(b)(6). (*See, e.g.,* Keeth's Motion to Dismiss, at

10820703v.2

p. 12.)   However, this is not the correct standard on a motion to dismiss a declaratory judgment action.   To the contrary, in the context of a declaratory judgment action, if a plaintiff alleges an "actual controversy," it has stated a cause of action for declaratory relief. *See Schwab*, *supra,* 896 F.Supp.2d 1124, 1132.   To this end, "[a] complaint for declaratory judgment should not be dismissed if the plaintiff established the existence of a justiciable controversy.... The test for the sufficiency of a complaint for declaratory judgment *is not whether the plaintiff will succeed in obtaining the decree he seeks favoring his position*, but whether he is entitled to a declaration of rights at all." *Id.* (emphasis added); *see also Perez v. IndyMac FSB,* No. 6:12-cv-1146-0r1-28TBS, 2012 U.S. Dist. LEXIS 158403, at *12 (M.D. Fla. Nov. 5, 2012); *Citizens Prop. Ins. Corp. v. Ifergane*, 114 So. 3d 190, 194 (Fla. App. 2012).

Here, Hanover easily alleges an "actual controversy" between it and the **Insureds** – a point that the insured entity, FCADV, has conceded through the filing of its own declaratory judgment action that alleges the existence of an "actual controversy" between itself and Hanover. *See* FCADV Complaint [Dkt. #19-1], ¶37. The Defendants' claim that Hanover must dispel "any doubt" to survive their 12(b)(6) motion is therefore a misstatement of this Court's standard for adjudicating Defendants' motions. Moreover, as explained herein, through the eight corners rule, Hanover has no duty to defend the Insureds, and instead,

10820703v.2

Hanover will be entitled to a declaration in its favor once all of the motions before this Court are adjudicated.

### 2.     The Key Terms and Conditions of the Hanover Policy

Hanover issued to FCADV a Nonprofit Entity Advantage Policy (the "Policy").  *See* Ex. 1 to Hanover Complaint.  Section IV of the D&O Coverage of the Policy contains the Prior & Pending Proceedings Exclusion, which provides:

> A. Exclusions Applicable to All Insuring Agreements
>
> This insurance does not apply to **Loss** for any **Claim**:
>
>         \*                      \*                      \*
>
> 2. Prior & Pending Proceedings
>
> Based upon, arising out of or in any way related to any litigation, administrative or arbitration proceeding, written demand pending against any **Insured**, or any order, decree or judgment entered prior to or on the Prior & Pending Proceedings Date set forth in Item 5. of the D&O Declarations.

*Id*.  The "Prior & Pending Proceedings Date set forth in Item 5. of the D&O Declarations is "12/19/2019." *Id*.  "**Loss**" means "**Defense Expenses** and the amount that the **Insured** is legally obligated to pay as a result of a **Claim** including:…[m]onetary judgments, awards or settlements…". *Id*.  "**Claim**" is defined to include a "[c]ivil proceeding" (*id*.) – like the State Litigation.

- 7 -

### 3. *FCADV's Contractual Obligation to, "Upon <u>Demand</u>," Make Records Available to DCF*

The DCF Lawsuit (attached to Hanover's Complaint as Exhibit 2) expressly alleges that FCADV failed to comply with its contractual obligation to produce documents. Specifically, the DCF Lawsuit alleges that "[d]espite its contractual obligations, FCADV repeatedly and continuously failed and refused to comply with, and breached, Contracts LN967 and LJ990," which required production of documents and information. *See*, DCF Lawsuit, ¶22. Both contracts, moreover, make clear that FCADV shall provide documents to DCF "upon *demand*." (Emphasis added.) *See,* Hanover Complaint, ¶¶96-97 (attaching Contracts as Exhibits 3 and 4 thereto).

### 4. *Under Florida Law, if There is No Duty to Defend, There is No Duty to Indemnify*

Multiple defendants argue that any declaration on Hanover's duty to indemnify would be premature, since the duty to indemnify is dependent on the outcome of the underlying State Litigation, which has not yet been resolved. However, where, as here, there is no duty to defend under the Prior & Pending Proceeding Exclusion, there can be no duty to indemnify, a circumstance that completely nullifies Defendants' argument.

Under Florida law, an insurer's duty to defend is triggered if the allegations of a complaint brought against the insured fall within the scope of the insurer's

10820703v.2

duty. *E.S.Y., Inc. v. Scottsdale Ins. Co.*, 139 F.Supp. 3d 1341, 1351 (S.D. Fla. 2015). A court looks no further than to the terms of the insurance policy and the allegations of the complaint brought against the insured to determine if the duty to defend is triggered. *Id.* at 1351-52. There is, however, no duty to defend when the complaint shows that a policy exclusion applies to exclude coverage. *Md. Cas. Co. v. Fla. Atl. Orthopedics, P.L.*, 771 F. Supp. 2d 1328, 1332 (S.D. Fla. 2011).

Particularly germane here, "[t]he duty to defend is broader than the duty to indemnify, [] and thus it is well-settled under Florida law that where an insurer has no duty to defend, it has no duty to indemnify its insured." *Clarendon Nat'l Ins. Co. v. Vickers*, 2006 U.S. Dist. LEXIS 102990, 2006 WL 8434796, at *3 (S.D. Fla. May 25, 2006) (collecting cases). Accordingly, "a court's determination that the insurer has no duty to defend *requires* a finding that there is no duty to indemnify." *Philadelphia Indem. Ins. Co. v. Yachtsman's Inn Condo Ass'n, Inc.*, 595 F. Supp. 2d 1319, 1322 (S.D. Fla. 2009); *David R. Farbstein, P.A. v. Wesport Ins. Corp.*, No. 16-CV-62361, 2017 U.S. Dist. LEXIS 125990, 2017 WL 3425327, at *9 (S.D. Fla. Aug. 9, 2017) (determining, despite the ongoing underlying proceedings, that there could be no duty to indemnify because the insurer was under no duty to defend).  Accordingly, as Hanover's rights can be completely adjudicated by this Court in the present action, there is no reason to dismiss or stay the present case.

**B.**   **The Prior & Pending Proceedings Exclusion Bars Coverage for the State Litigation for All Insureds**

Defendants contend that Hanover's Complaint should be dismissed or stayed because Hanover's duty to indemnify is dependent on the resolution of the State Litigation. But as the relevant facts demonstrating the applicability of the Prior & Pending Proceedings Exclusion are not in dispute, and because Hanover has no duty to indemnify, because it has no duty to defend, there are no grounds for staying this action pending the resolution of the State Litigation – much less outright dismissing it.

A stay is also not warranted on the basis that certain former directors of FCADV have moved to dismiss the DCF Action and could therefore potentially be let out of that action – those motions do not dictate Hanover's duty to defend or indemnify, and as discussed below, the Prior & Pending Proceedings Exclusion operates to bar coverage regardless of which **Insureds** are party to this case.

   1.   *Prior to the Hanover Policy's Inception, DCF Made No Fewer Than Five "Written Demand" Letters to FCADV*

While the State Litigation is in its relative infancy, this is not a case where it would be beneficial to wait for the development of an underlying factual record; indeed, the core allegations relevant to the Prior & Pending Proceedings Exclusion are clear, straightforward, and not in dispute.

According to the DCF Lawsuit, between August 27, 2018 and January 31, 2020, "DCF, through both its OIG and OGC, _made repeated and multiple demands_ for production of documents reflecting the income and expenditure of funds provided by DCF." DCF Lawsuit, ¶48.f. (Ex. 2 to Hanover Complaint).  Specifically, DCF sent six "written demands" to FCADV – including, importantly, _five "written demands" prior to December 19, 2019_ (the date stated in the Prior & Pending Proceedings Exclusion) – but FCADV failed to provide said information and documents. Indeed, the DCF Lawsuit alleges that "_[d]espite its contractual obligations_, FCADV repeatedly and continuously failed and refused to comply with, and breached, Contracts LN967 and LJ990, including, but not limited to, by:…_Failing to maintain and provide adequate financial records_;…[and] _Failing to comply with inspections, reviews, investigations or audits deemed necessary by the DCF Office of the Inspector General (OIG)_." _Id_., ¶22 (emphasis added).  A detailed recitation of the allegations in the DCF Lawsuit, including the content of each of the written demands, is set forth in Hanover's Complaint, which is incorporated herein. _See,_ [Dkt. #1], ¶¶ 50 – 80.

### 2.    The Hanover Policy's Inception on December 19, 2019

Despite having received five "written demand" letters, FCADV obtained its first ever Policy from Hanover which commenced on December 19, 2019 (but, critically, FCADV failed to disclose the five "written demands" in Hanover's

Policy Application). As noted above, the Policy specifically excludes any **Claim** arising out of prior "written demand" pending against any **Insured**.

### 3.    *The State Litigation*

After FCADV's receipt of the five "written demand" letters, and after Hanover issued its Policy, the two actions comprising the State Litigation (*i.e.*, the DCF Lawsuit and the AG Lawsuit) were both filed on March 4, 2020.

The DCF Lawsuit alleges that FCADV and the individual Defendants entered into two Contracts (Contracts LN967 and LJ990) with DCF.  Ex. 2, ¶20. Both contracts mandated that FCADV shall provide documents to DCF "upon *demand*." (Emphasis added.)  *See,* Hanover Complaint, ¶¶96-97.  The DCF Lawsuit alleges that pursuant to these two Contracts, DCF sent five prior "written demands" to FCADV seeking documents related to the payment of excessive compensation to FCADV executives, which the DCF Lawsuit alleges FCADV and its executives failed to provide.

The AG Lawsuit, like the DCF's prior written demands and the DCF Lawsuit, directly relates to the alleged excessive compensation (*i.e.*, salary, bonuses and PTO) received by Carr as CEO of FCADV. Ex. 12 to Hanover Complaint, ¶¶25-26.  The AG Lawsuit alleges: "DCF has made efforts from 2018 forward to obtain all pertinent records of FCADV from it, but FCADV has engaged in a campaign of stonewalling by which it has resisted producing requested records.

10820703v.2

While FCADV has slowly been turning over its records to DCF, many of its records have contained redactions. To date…FCADV still has not fully complied with DCF's requests for records." *Id*., ¶33.

4.     **The Prior and Pending Proceedings Exclusion Applies to Exclude Coverage for the State Litigation Because the State Litigation is "Based Upon" and "Arises Out of" the Five Prior Written Demand Letters**

The applicability of the Hanover Policy's Prior & Pending Proceedings Exclusion to the State Litigation (*i.e*., the "**Claim**") is clear on its face. The exclusion provides that "[t]his insurance does not apply to **Loss** for any **Claim**:…[b]ased upon, arising out of or in any way related to any…litigation, [or]…*written demand* pending against any **Insured**…prior to [December 19, 2019]." (Underlining and italics added).

Although short-handedly referenced as the "Prior & Pending Proceedings" Exclusion, or the "Prior & Pending Litigation" Exclusion, these exclusions routinely also bar coverage for prior "*demands*" – *see, e.g*., the "Prior Litigation Exclusion" enforced by the Eleventh Circuit in *HR Acquisition I Corp. v. Twin City Fire Ins. Co*., 547 F.3d 1309, 1317 (11th Cir. 2008): "[t]he 'prior litigation' exclusion exempts from coverage a Claim related to '*any demand*, suit, or other proceeding against any Insured which was pending on or existed prior to the applicable Prior Litigation Date.'" (Emphasis added). *See also, United States Liab. Ins. Co. v. Kelley Ventures, LLC*, 137 F. Supp. 3d 1312 (S.D. Fla. 2015) ("USLI is

- 13 -

relieved of its duty to defend under the Pending or Prior Litigation Exclusion… *it simply excludes from coverage a…demand in writing that the insured received before the Policy coverage began*.") (Emphasis added). The Hanover Prior & Pending Proceedings Exclusion is broadly worded to include any **Claim** arising out of prior "written demands," like those set forth in the communications from DCF to FCADV, which took place over the many months before the commencement of the Hanover Policy.

Indeed, in this case, the DCF Investigation commenced its examination of executive compensation at FCADV on August 27, 2018 – over 15 months before the inception of the Policy on December 19, 2019. As part of that investigation, DCF, based on the express provisions of the two DCF-FCADV Contracts, made *five written demands* to FCADV for it to produce documents and provide information on executive compensation at FCADV. The ensuing State Litigation (the **Claim** for which FCADV and the other **Insureds** are seeking coverage from Hanover) resulted from these "written demands," including FCADV's lack of compliance with the "written demands" as elucidated herein. It is readily apparent that under the language of the Prior & Pending Proceedings Exclusion, the State Litigation is based upon, arises out of, and is related to the five "written demands," which were pending before the December 19, 2019 inception date.

Moreover, the written demands were not incidental or tangential to DCF's Investigation – rather, they were integral components that were expressly made under the two DCF-FCADV Contracts and apart of the two lawsuits that make up the State Litigation. For example, the Contracts both state that "[u]pon *demand*," FCADV was obligated to produce records or documents to DCF. *See* Contract LN967, Section 25.c. (Ex. 4); and Contract LJ990, Section 5.1.1 (Ex. 3).  Indeed, in the DCF Lawsuit, DCF expressly alleges that it "*made repeated and multiple demands* for production of documents reflecting the income and expenditure of funds provided by DCF." Ex. 2, ¶48.f. (emphasis added). Meanwhile, the AG Lawsuit avers that "DCF has made efforts from 2018 forward to obtain all pertinent records of FCADV from it, but FCADV has engaged in a campaign of stonewalling by which it has resisted producing requested records." Ex. 12, ¶33. There can be no dispute that State Litigation depends upon and repeatedly complains of FCADV's failures to adequately respond to the five "written demands."

Over the years, Florida courts have routinely enforced the application of Prior & Pending Exclusions. In *Vozzcom, Inc. v. Great American Insurance Company*, 666 F. Supp. 2d 1332 (S.D. Fla. 2009), *aff'd* 2010 U.S. App. LEXIS 6852 (11th Cir. 2010), the District Court for the Southern District of Florida interpreted a substantively identical Prior & Pending Exclusion, and held that "the [subsequent] claim *requires only a tenuous connection*" to the prior matter in order

- 15 -

to be excluded under the policy. *Id*. at 1340. *See also, United States Liab. Ins. Co. v. Kelley Ventures, LLC*, 137 F. Supp. 3d 1312 (S.D. Fla. 2015); *Acosta, Inc. v. Nat'l Union Fire Ins. Co*., 39 So. 3d 565 (Fla. 1st DCA 2010); *Health First, Inc. v. Capitol Specialty Ins. Corp*., 230 F. Supp. 3d 1285 (M.D. Fla. 2017); *RSUI Indem. Co. v. Atty's. Title Ins. Fund, Inc*., 2016 U.S. Dist. LEXIS 97088 (M.D. Fla. June 6, 2016). Here, there is a clear and detailed nexus between the prior "written demands" and the State Litigation. Accordingly, there is no reasonable dispute that the State litigation arises from these "written demands."

Finally, there can be no reasonable dispute that the letters described herein are, in fact, "written demands." In *Feldman v. Imperium Ins. Co*., 2015 U.S. Dist. LEXIS 135478 (M.D. Fla. Oct. 5, 2015), the insurance policy defined "Claim" as "*a demand* made upon any INSURED for DAMAGES, including, but not limited to, service suit [*sic*] or institution of any alternative dispute resolution proceedings against any INSURED." (Emphasis added.) *See also, Lyublanovits v. Zebny* (*In re Jones*), 243 So. 3d 503, 505 (Fla. 2d Dist. 2018); *State ex rel. Williams v. Coleman*, 131 Fla. 872, 888, 180 So. 360 (Fla. 1938) (Florida Supreme Court concurring opinion noted: "The same Dictionary defines the word 'demand' in part as follows: 'To ask or call for with authority; to call for urgently, peremptorily or insistently.'").

Here, the five letters from a governmental agency DCF to FCADV, sent pursuant to the two express DCF-FCADV Contracts, that contractually mandated the production of records and documents "upon demand," are most certainly "written demands." Indeed, in the DCF Lawsuit, *DCF itself* expressly alleges that the written letters DCF sent to the FCADV "*made repeated and multiple demands* for production of documents reflecting the income and expenditure of funds provided by DCF." Ex. 2, ¶48.f. (emphasis added). These various writings certainly describe an authoritative and urgent request for documents and information, to which DCF claims it was entitled under two contracts. Indeed, after FCADV's continuous "stonewalling" (the Florida Attorney General's description) from producing these documents, the State Litigation was filed against FCADV.

Based upon the foregoing, it is clear that Hanover has no duty to defend the **Insureds** under the eight corner rule, and that there is an obvious controversy about Hanover's duty to defend, which this Court should address and adjudicate at its earliest opportunity. *Accord Schwab*, *supra*; *Higgins*, *supra*. For these reasons, Defendants' motions to dismiss, each of them, should be denied.

## C.   There is No Basis to Stay this Case Based upon the Encroachment on Issues in the State Litigation

In *Higgins v. State Farm Fire & Cas. Co.,* 894 So. 2d 5, 15 (Fla. 2004), the Florida Supreme Court expressly recognized that:

> A prompt determination of coverage potentially benefits the insured, the insurer, and the injured party. If coverage is promptly determined, the insurance carrier is able to make an intelligent decision on whether to settle the claim. If the insurer is precluded from having a good faith issue of coverage expeditiously determined, this interferes with early settlement of claims. The plaintiff certainly benefits from a resolution of coverage in favor of the insured. On the other hand, if coverage does not exist, the plaintiff may choose to cut losses by not continuing to litigate against a defendant who lacks insurance coverage.

This fundamental concept is followed in federal courts, which agree with the commonsense proposition that a prompt determination as to coverage benefits all parties. *See, e.g., Colony Ins. Co. v. Village at Dadeland Condo. Ass'n,* No. 09-22369, 2010 WL 1817038, at *2-3 (S.D. Fla. Apr. 15, 2010) (denying motion to dismiss and motion to stay based on *Higgins); Nationwide Mut. Fire Ins. Co. v. Myers,* No. 5:08-cv-142, 2009 WL 890385, at *3 (M.D. Fla. Mar. 31, 2009) (same).   Following *Higgins,* and the three part test outlined therein, this Court should not use its discretion to stay this coverage dispute regarding Hanover's duty to defend, particularly where both FCADV and Hanover agree that a justiciable controversy exists and that a resolution of this coverage dispute is presently necessary.[3]

---

[3] Here, the *Higgins* factors weigh against a stay in that (1) the present case and the State Litigation are mutual exclusive, and (2) a lack of coverage would certainly impact a claim for monetary damages in the State Litigation, particularly for the individual insureds.  *See e.g. Accord Homeowners Prop. & Cas. Ins. Co. v. Hurchalla*, 171 So.3d 230, 233 (Fla. 4th Dist. 2015)

- 18 -

Moreover, the key, applicable exclusion requires *absolutely no factual development*, and can be applied based solely on the allegations of the State Litigation. *See, e.g. Sec. First Ins. Co. v. Phillips*, 2020 Fla. App. LEXIS 8308 (June 12, 2020) (reversing dismissal of declaratory judgment complaint and finding that a court could make a declaratory determination as to whether an event occurred prior the inception of the insurance policy); *Philadelphia Indem. Ins. Co. v. Yachtsman's Inn Condo Ass 'n,* 595 F. Supp. 2d 1319, 1324-25 (S.D. Fla. 2009) (finding that pollution exclusion unambiguously applied to allegations of a complaint resulting in no duty to defend or indemnify); *Hermitage Ins. Co. v. Studio, Inc. Night Club Corp.*, 2009 WL 103664, at *3 (M.D. Fla. Jan. 15, 2009) (finding that insurer did not have a duty to defend or indemnify insured for complaint alleging an assault and battery based on assault and battery exclusion).

Indeed, there is no dispute as to the existence of the prior "written demand" letters from the DCF to FCADV, the only fact needed by Hanover to trigger the Prior & Pending Proceeding Exclusion.  Since this case will not encroach upon any factual disputes in the State Litigation and Defendants have not shown that it will do so, and since the issues presented to this Court for declaratory relief can and should be expeditiously determined by this Court, Defendants' efforts to stay

this coverage action should be denied.[4]  *Accord Hurchalla*, *supra* (in quashing stay order under *Higgins* analysis, and placing burden of showing prejudice from coverage action on the policyholder and found that none existed).

**D.**     **Under Eleventh Circuit Precedent on Preemption, the *Colorado River* Doctrine – Not the *Wilton-Brillhart* Doctrine – Applies**

On March 20, 2020, Hanover filed this coverage lawsuit; and then, ten weeks *later*, on June 3, 2020, FCADV filed a similar coverage lawsuit in Florida state court (the FCADV Lawsuit). Now, certain of Defendants argue that under the *Wilton/Brillhart* doctrine, this Court should elect not to exercise its diversity jurisdiction and dismiss Hanover's Coverage Lawsuit,[5] in favor of the later-filed State Court Lawsuit (which is now also before this Court).

However, under Eleventh Circuit precedent (as stated in a pre-1981 Fifth Circuit decision[6]), the *Wilton/Brillhart* doctrine[7] applies only where a lawsuit seeks

---

[4] Regarding the other exclusions/coverage issues raised in Hanover's Complaint, beyond the Prior & Pending Proceeding Exclusion, to the extent that adjudication of those exclusion impact indemnity, and not Hanover's duty to defend, Hanover does not oppose a stay regarding those issues while the duty to defend issue is adjudicated by this Court.

[5] *See, e.g.*, Carr's Motion to Dismiss [Dkt. #19], p. 1 ("Defendant Tiffany Carr…files this Motion to Dismiss…pursuant to the *Wilton-Brillhart* Abstention Doctrine…").

[6] *See, e.g.*, *Bonner v. Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) ("We hold that the decisions of the United States Court of Appeals for the Fifth Circuit (the 'former Fifth' or the 'old Fifth'), as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and the bankruptcy courts in the circuit."); *Plaintiff B v. Francis*, 2010 U.S. Dist.

- 20 -

_declaratory relief alone_. _PPG Industries, Inc. v. Continental Oil Co_., 478 F.2d 674, 679 (5th Cir. 1973) ("the strict holding of _Brillhart_" applies to "an action seeking only declaratory relief.").[8]  Conversely, where, as here, a lawsuit seeks both declaratory relief and _coercive relief_ (_e.g_., monetary relief), then the _Colorado River_ doctrine governs this Court's decision whether to exercise its federal diversity jurisdiction. And _Colorado River_ mandates that a federal Court should decline to exercise jurisdiction only in "exceptional circumstances" – which are not present here. _See, Colorado River Water Conservation Dist. v. United States_, 424 U.S. 800, 813, 817 (1979).

---

LEXIS 10293, at \*4 (N.D. Fla. Feb. 5, 2010) ("Pursuant to _Bonner v. City of Prichard_, 661 F.2d 1206 (11th Cir. 1981),  the decisions of the Fifth Circuit before September 30, 1981 are binding precedent on all federal courts within the Eleventh Circuit.").

[7] _See Wilton v. Seven Falls, Co_., 515 U.S. 277 (1995) and _Brillhart v. Excess Ins. Co._, 316 U.S. 491 (1942).

[8] The Fifth Circuit has continuously reaffirmed the _PPG_ decision several times: "_Brillhart_ is only applicable 'when a district court is considering abstaining from exercising jurisdiction over a declaratory judgment action.' In contrast, when an action contains any claim for coercive relief, the _Colorado River_ abstention doctrine is ordinarily applicable." _Kelly Inv., Inc. v. Cont'l Common Corp_., 315 F.3d 494, 497 n.4 (5th Cir. 2002) (citation omitted). Other circuits have made similar holdings. _See, e.g., Kanciper v. Suffolk County Society for the Prevention of Cruelty to Animals, Inc._, 722 F.3d 88 (2d Cir. 2013) ("_Wilton_ does not apply where, as here, a plaintiff does not seek purely declaratory relief, but also…seeks damages caused by the defendant's conduct."); _Sinclair Oil Corp. v. Amoco Production Co._, 982 F.2d 437, 440 (10th Cir. 1992) (Court drew a bright line between "declaratory actions" and "coercive actions," observing that unlike claims for coercive relief, "declaratory actions do not invoke the federal judiciary's 'virtually unflagging obligation' to exercise its jurisdiction.").

- 21 -

For example, in *Mega Life & Health Ins. Co. v. Tordion*, 399 F. Supp. 2d 1366 (S.D. Fla. 2005), an insurer filed a federal lawsuit seeking declaratory and coercive relief against its insured, while a parallel state action was also pending. *Id.* at 1368. The insured argued under *Wilton* and *Brillhart*, the federal court should "abstain from exercising jurisdiction and dismiss this [federal] action." *Id.* at 1369. The district court, however, held that "[u]nder the *Colorado River* doctrine, when a party seeks coercive relief in addition to declaratory relief, federal courts have a virtually 'unflagging obligation…to exercise the jurisdiction given them,' and should only abstain in 'exceptional circumstances'"; the court further noted that "the 'rule is generally that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal Court having jurisdiction.'" *Id.* at 1370 (*quoting Colorado River*, 424 U.S. at 813, 817).

Similarly, in *Hall v. Sargeant*, 2018 U.S. District LEXIS 171099 (S.D. Fla. Oct. 1, 2018), a declaratory judgment action was filed that also sought "coercive relief," and the Florida District Court was asked to decide whether to apply the *Colorado River* doctrine, or *Wilton/Brillhart*. The district court noted that "decisions of the Fifth Circuit before October 1, 1981, remain binding precedent on this Court," and defendant "has not identified an Eleventh Circuit decision overturning *PPG Industries*." *Id.* at \*14. The court held that because there was not "any evidence in the record" from which the Court could conclude that plaintiff's

coercive claims were "frivolous" or added "solely as a means of defeating *Wilton-Brillhart* abstention," then the claims were "mixed" and *Wilton-Brillhart* did not apply. *Id.* at *15. *See also Zurich Am. Ins. Co. v. European Tile & Floors, Inc*., 2016 U.S. Dist. LEXIS 81222, at *7 (M.D. Fla. June 22, 2016) ("[W]hen a complaint contains both declaratory and non-declaratory judgment claims, courts have relied on the principles of *Colorado River*, as opposed to *Wilton/Brillhart*").

In this case, Hanover is seeking more than just declaratory relief – as set forth in Count II of its Complaint (¶127), it seeks recovery of its payment of all **Defense Costs** paid to the defendants in the State Litigation. As this claim for monetary relief is entirely consistent with Florida's substantive law,[9] it is most certainly not frivolous – nor is it asserted simply to defeat *Wilton/Brillhart* abstention. Indeed, in Hanover's initial coverage letter, Hanover expressly conditioned its payment of the defendants' **Defense Costs** on: (i) Hanover's right

---

[9] Under Florida law, if it is determined that Hanover has no duty to defend, Hanover has an absolute right to recover all monies it has paid to the Defendants. *See, e.g*., *Certain Interested Underwriters at Lloyd's, London v. Halikoytakis*, 556 Fed. Appx. 932, 933 (11th Cir. May 20, 2014) ("Under Florida law, a liability insurer that has reserved the right to seek reimbursement is entitled to recover fees and costs once it is determined that the insurer has no duty to defend."); *Colony Ins. Co. v. G&E Tires & Serv., Inc*., 777 So. 2d 1034, 1039 (Fla**.** 1st DCA 2000) ("[The insurer] Colony timely and expressly reserved the right to seek reimbursement of the costs of defending clearly uncovered claims…Colony is entitled to reimbursement.").

to file a Coverage Lawsuit against the Defendants; *and* (ii) Hanover's right, under Florida law, to recover all **Defense Costs** paid to the defendants.[10]

In addition, Hanover has asserted further coercive relief against the Defendants through its Crossclaim in the related FCADV Lawsuit – which, again, Hanover has moved to consolidate into this action. Specifically, Hanover's Crossclaim asserts multiple causes of action against the Defendants for reimbursement of **Defense Costs** it has already paid, including Fraud for misrepresentations in the Policy Application (failing to disclose the five prior "written demands" against FCADV),[11] Unjust Enrichment, and Money Had and Received. *See,* Hanover Crossclaim [No. 4:20-cv-00309, Dkt. #5]. If Hanover's consolidation request is granted, then each of those claims will also merge into this case. Accordingly, the *Colorado River* doctrine governs Hanover's Lawsuit here and, respectfully, this Court has a "virtually 'unflagging obligation…to exercise

---

[10] *See*, *Colony Ins. Co. v. G&E Tires & Serv., Inc.*, 777 So. 2d 1034, 1039 (Fla. 1st DCA 2000) ("[The insurer] Colony timely and expressly reserved the right to seek reimbursement of the costs of defending clearly uncovered claims…Colony is entitled to reimbursement.").

[11] *See Mega Life & Health Ins. Co.*, 399 F. Supp. 2d at 1369-1370 (S.D. Fla. 2005) (holding that misrepresentations in policy application gives rise to claims for "coercive relief," including rescission, such that "*Colorado River*, rather than *Brillhart* and *Wilton*, governs whether this federal court action should be dismissed on abstention grounds"). *See also, Government Emples. Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998) ("When other claims are joined in an action for declaratory relief (e.g.,…*rescission*…) the district court should not, as a general rule, remand or decline to entertain the claim for declaratory relief.") (emphasis added).

the jurisdiction given [it],'" and "should only abstain in 'exceptional circumstances.'" *Hall*, 2018 U.S. District LEXIS 171099 at *15 (*quoting Colorado River*, 424 U.S. at 813).

The *Hall* court identified several additional factors to consider in deciding whether to dismiss a suit on abstention grounds under *Colorado River*, including: "(1) whether one of the courts has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the potential for piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal or state law will be applied; and (6) the adequacy of each forum to protect the parties' rights. In applying these factors, one must keep in mind that the 'abstention inquiry must be heavily weighed in favor of the exercise of jurisdiction.'" *Hall*, 2018 U.S. District LEXIS 171099 at **15-16 (citations omitted). Here, the balance of factors weighs in favor of keeping federal jurisdiction.

As to Factor 1, the Court has not assumed jurisdiction over property.

As to Factor 2, the federal forum is not inconvenient when compared to the state forum; indeed, the Second Judicial District of Leon County is located a mere 0.3 miles from the District Court. ("The Court takes judicial notice that the federal courthouse in West Palm Beach is approximately three city blocks away from the 15th Judicial Circuit's courthouse. The second factor does not weigh in favor of abstention." *Hall*, 2018 U.S. District LEXIS 171099 at *16).

As to Factor 3 (the potential for piecemeal litigation), Hanover has removed the FCADV Lawsuit and moved to consolidate it into this action, in part to prevent piecemeal litigation.

As to Factor 4 (the order in which the forums obtained jurisdiction), it clearly favors maintaining jurisdiction here: Hanover filed this action on March 20, 2020, ten weeks *before* the filing of the FCADV Lawsuit (*i.e.*, June 3, 2020).

As to Factor 5 (whether federal or state law will be applied), Florida law governs coverage under the Hanover Policy; however, this Court is asked simply to compare the underlying lawsuits with Hanover's Policy language, to determine if a Policy exclusion applies or not – a routine issue in federal court. This is not a "complex question of state law" that favors abstention. *See, Hall*, 2018 U.S. District LEXIS 171099 at *17 ("The fifth factor 'only strongly favors abstention if the case involves "complex questions of state law."' The instant case involves straightforward issues of Florida law…which this Court is fully competent to adjudicate.").

Finally, as to Factor 6 (the adequacy of each forum to protect the parties' rights), Hanover has an absolute right to proceed against Defendants in federal court under Article III, Section 2 of the United States Constitution and 28 U.S.C. § 1332. As the *Hall* court noted that "[w]hile the undersigned has no doubt that the 15th Judicial Circuit could provide a fair and equitable forum to Plaintiffs,

Congress has, for policy reasons, afforded them the option to proceed here. Nothing in this record weighs against allowing them their preferred forum. The sixth factor favors retention of federal jurisdiction over this dispute." *Id.* at \*\*17-18. The same rationale applies here, and this Court should, respectfully, decline to dismiss this suit on abstention grounds under *Colorado River.*

Finally, even assuming, *arguendo*, that this Court determines *Wilton/Brillhart* – and not *Colorado River* – applies here (which it does not), the balance of the applicable *Wilton/Brillhart* factors still favor maintaining federal jurisdiction. In *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328 (11th Cir. 2005), the Eleventh Circuit provided nine factors, or "guideposts," for "consideration to aid district courts in balancing state and federal interests," with the caveat that the "list is neither absolute nor is any one factor controlling." *Id.* at 1331. Therefore, "the Court has no obligation to consider each and every factor on the [*Ameritas*] list and is free to consider any other factors it deems relevant or significant." *Bright House Networks, LLC v. Pinellas Cnty.*, No. 14-1237, 2014 WL 4794786, \*8 (M.D. Fla. Sept. 25, 2014) (citation and quotation marks omitted).  Specifically, Factors 2 through 9 all militate in favor of upholding federal jurisdiction over this dispute.

Defendants' contention that *Ameritas* Factor 1 could not be more "lopsided" in their favor is misleading, as Defendants focus solely on "the strength of the

state's interest," when Factor 1 actually is "the strength of the state's interest *in having the issues raised in the federal declaratory action decided in the state courts…*". *Ameritas*, 411 F.3d at 1331 (emphasis added). Hanover does not dispute that the State of Florida is strongly invested in the outcome of the underlying State Litigation – but whether Hanover has a duty to defend or indemnify the **Insureds** is a much narrower question that can be readily dealt with separately by this Court.

As to *Ameritas* Factor 2 (whether a judgment in federal court would settle the controversy), the answer is "yes," as the ruling that Hanover seeks would definitively state that Hanover has no duty to defend or indemnify the **Insureds**, and would entitle Hanover to reimbursement for **Defense Expenses**. On this point, the Defendants repeat their misguided argument that this case depends upon the State Litigation to resolve factual issues – *it does not*; instead, as discussed throughout this brief, the facts actually bearing on coverage are not in dispute (*i.e.*, the five prior "written demand" letters), and there is no danger of a "contrary factual determination" in state court.  As such, *Ameritas* Factor 7 (whether the underlying factual issues are important) therefore strongly favors upholding federal jurisdiction. Similarly overblown are the Defendants' arguments that potential inconsistencies on the facts could cause "friction" between federal and state courts (*Ameritas* Factor 5), and that the state court is in a better position to evaluate the facts (*Ameritas* Factor 8). Again, this Court is being asked to decide whether five

undisputed prior "written demand" letters trigger the Prior & Pending Proceedings Exclusion; Hanover does *not* seek adjudication *of any facts* – let alone any harmful "facts" – at issue in the underlying State Litigation.

Another theme of the Defendants' *Wilton/Brillhart* analysis is that Hanover has a fully available alternative remedy – namely, wait for the State Litigation to resolve and then act on factual determinations made there to determine coverage. *See, e.g.,* Carr Motion to Dismiss, p. 16. While this is indeed an "alternative remedy," it is far from a "*superior* alternative remedy" (*Ameritas* Factor 6) – and it completely ignores the Florida Supreme Court's mandate in *Higgins*, *supra*, that endorses fast resolution of coverage disputes to benefit *all of the parties*. Consistent therewith, Defendants' suggestion ignores the significant costs to Hanover for defending numerous parties, represented by different counsel, in more than one lawsuit – particularly where, based on the exclusions discussed herein, there is no actual benefit in "waiting," and, in fact, it is quite contrary to *Higgins*. This coverage action was not premature, and it was not an instance of "procedural fencing" (*Ameritas* Factor 4) in the face of an "easily anticipated" State Coverage Suit.[12]  Instead, consistent with the Florida Supreme Court in *Higgins*, 894 So.2d at 15 (encouraging that "[a] prompt determination of coverage benefits the insured,

---

[12] How is FCADV's filing an identical coverage lawsuit six weeks later seeking identical relief in state court not "procedural fencing," when FCADV could easily have added Travelers as a Third-Party Defendant, and its other "Nominal Defendants" *to this existing lawsuit*?

the insurer, and the insured party"), it was a valid exercise of Hanover's right to seek swift resolution of a dispute in federal court (*Ameritas* Factor 3 – whether the federal court serves a useful purpose) based on insurance coverage law – hardly an uncommon topic in federal courts, and far from a complex issue of state law that might be better suited to a state forum (*Ameritas* Factor 9 – nexus between issues and state law).

Therefore, even if this Court where to apply *Wilton/Brillhart* and *Ameritas*, there is no basis for abstention.

**E.    Through the Crossclaim/FCADV Lawsuit – Which Hanover has Moved to Consolidate into this Case – All Potentially Interested Parties are Now Joined to this Dispute**

***1.    Penny Morrill***

In the Keeth Defendants' Motion to Dismiss [Dkt. #12, p.3], they assert a separate argument that Hanover's claims against Penny Morrill, specifically, should be dismissed because, while her name appears in the caption of the Complaint, it is missing from the list of parties within the body of the pleading. As a result, they contend, there is no factual allegation that Morrill is a Florida citizen, and so she should be dismissed for lack of subject matter jurisdiction and/or failure to state a claim. *Id.*, pp. 3-4. While the Keeth Defendants are correct that allegations of citizenship are required to establish diversity jurisdiction, *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994), the omission as to Morrill was

- 30 -

clearly inadvertent, as she undoubtedly belongs in this case as a former director of FCADV who is a defendant in the underlying litigation. As Morrill is already a party to the underlying dispute, and she is represented in this action in a group of several other former directors, there is no prejudice to her in in excusing the unintended oversight. In any event, in the related FCADV Lawsuit, Morrill is also a named defendant – as a "*citizen and resident of the State of Florida*," and in response Hanover has asserted a Crossclaim against the former directors, including Morrill, specifically asserting jurisdictional allegations against her. Hanover has moved to consolidate the FCADV Lawsuit, including the Crossclaim, into this action, and if that request is granted, Morrill's objection will further be rendered moot. The motion to dismiss in this case as to Morrill is therefore unavailing, and should be denied.[13]

### 2. Travelers, DCF, and the Florida AG

Finally, certain Defendants argue that Hanover's failure to join "necessary" and "indispensable" parties to its lawsuit – namely, Travelers, DCF, and the Florida AG – warrant dismissal of the entire action under Fed. R. Civ. P. 12(b)(7) and 19. *See,* FCADV's Motion to Dismiss [Dkt. #15], pp. 14-21. Hanover disagrees with this position, as Travelers (which had a separate, non-overlapping

---

[13] In the event that the FCADV Lawsuit is not consolidated into this action, and this Court deems the allegations against Morrill as inadequate, Hanover will, respectfully, seek leave to amend its Complaint to cure this "technical" issue.

insurance policy), DCF, and the AG do not determine whether Hanover has a duty to defend and indemnify the **Insureds**. Put another way, these additional parties do not need to be part of this action for this Court to make a ruling as to coverage under the Hanover Policy, and therefore are neither "necessary" nor "indispensable." *See* Fed. R. Civ. P. 19 (setting forth factors for when a party must be joined, including whether a judgment rendered in the party's absence would be adequate, and the extent to which a judgment rendered in the party's absence might prejudice any party).

Nevertheless, and similar to with Morrill, the issues should be moot, since Hanover has moved to consolidate the FCADV Lawsuit – which includes Hanover, Travelers, DCF, and the AG – into this case, which would join all purportedly interested parties here. All claims involving Hanover and the **Insureds** would then be resolved under one caption, which would be in the interest of judicial economy and efficiency. Finally, it is revealing that in this action FCADV claims Hanover's Complaint should be dismissed because it did not include "necessary" and "indispensable" parties such as DCF or the AG, whereas in the FCADV Lawsuit it categorizes DCF and the AG as "Nominal Defendants," which the Eleventh Circuit defines as "neither necessary nor indispensable" to the action. *Thermoset Corp. v. Bldg. Materials Corp. of Am.*, 849 F.3d 1313, 1317 (11th Cir. 2017). This inconsistency in pleadings demonstrates the lack of merit in the technical

jurisdictional arguments asserted against Hanover here. Defendants' argument under Rule 12(b)(7) and Rule 19 should be rejected so that the valid and actual dispute among the parties may be properly addressed.

### III.   CONCLUSION

For the foregoing reasons, Hanover respectfully requests that this Court deny Defendants' motions to dismiss or stay the Complaint, and that it award Hanover any such other and further relief as this Court deems just and equitable.

### IV.   WORD LIMIT CERTIFICATION

The undersigned hereby certifies that the word count for this document is 7,812.

July 3, 2020

Respectfully submitted,

HANOVER INSURANCE COMPANY

By:  /s/ Erik J. Tomberg

ERIK J. TOMBERG, ESQUIRE
(admitted *pro hac vice*)
Wilson Elser Moskowitz
Edelman & Dicker LLP
55 West Monroe Street, Suite 3800
Chicago, IL 60603
(312) 704-0550
erik.tomberg@wilsonelser.com

SEAN M. McDONOUGH, ESQUIRE
Florida Bar No. 896446
sean.mcdonough@wilsonelser.com

- 33 -

Wilson Elser Moskowitz
Edelman & Dicker LLP
111 North Orange Avenue Suite 1200
Orlando, Florida 32801
407-203-7599 - Phone
407-648-1376 - Facsimile

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 3, 2020, a true and correct copy of the foregoing was filed with the Northern District of Florida via CM/ECF and served by operation of the court's electronic filing system upon all registered participants, and paper copies will be served via first class mail on those indicated as non-registered participants.

/s/ Erik J. Tomberg
ERIK J. TOMBERG, ESQ.

10820703v.2